**Nos. 12-1081, 12-1213 and 12-2536**

———————————————————

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

———————————————————

**ROBERT LEIMKUEHLER, as trustee of
and on behalf of the LEIMKUEHLER,
INC. PROFIT SHARING PLAN, and on
behalf of all others similarly situated,**

   **Plaintiff-Appellant/
   Cross-Appellee,**

 **v.**

**AMERICAN UNITED LIFE INSURANCE
COMPANY,**

   **Defendant-Appellee/
   Cross-Appellant.**

———————————————————

**Appeal From the United States District Court
for the Southern District of Indiana, Indianapolis Division
Case No. 1:10-CV-333-JMS-TAB
The Honorable Jane Magnus-Stinson**

———————————————————

**BRIEF OF DEFENDANT-APPELLEE AND CROSS-APPELLANT
AMERICAN UNITED LIFE INSURANCE COMPANY**

———————————————————

Joel S. Feldman
Eric S. Mattson
Sarah H. Newman
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

**ORAL ARGUMENT REQUESTED**

**CIRCUIT RULE 26.1    DISCLOSURE STATEMENT**

Appellate Court No: 12-1081, 12-1213, 12-2536

Short Caption: Leimkuehler v. American United Life Insurance Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [   ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    American United Life Insurance Company

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Sidley Austin LLP; Barnes & Thornburg LLP; Hahn Loeser & Parks LLP

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

        OneAmerica Financial Partners, Inc. (wholly owned by American United Mutual Insurance Holding Company)

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

        None

Attorney's Signature: s/ Eric S. Mattson                          Date: August 8, 2012

Attorney's Printed Name: Eric S. Mattson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes**  X    **No** _____

Address: Sidley Austin LLP, One South Dearborn, Chicago IL 60603

Phone Number: 312-853-7000                     Fax Number: 312-853-7036

E-Mail Address: emattson@sidley.com

rev. 01/08 AK

**CIRCUIT RULE 26.1  DISCLOSURE STATEMENT**

Appellate Court No: _12-1081, 12-1213, 12-2536_

Short Caption: _Leimkuehler v. American United Life Insurance Company_

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

_American United Life Insurance Company_

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

_Sidley Austin LLP; Barnes & Thornburg LLP; Hahn Loeser & Parks LLP_

(3)   If the party or amicus is a corporation:

    i)   Identify all its parent corporations, if any; and

    _OneAmerica Financial Partners, Inc. (wholly owned by American United Mutual Insurance Holding Company)_

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

    _None_

Attorney's Signature: _s/  Joel S. Feldman_     Date: _August 8, 2012_

Attorney's Printed Name: _Joel S. Feldman_

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _☒_   **No** _____

Address: _Sidley Austin LLP, One South Dearborn, Chicago IL 60603_

Phone Number: _312-853-7000_     Fax Number: _312-853-7036_

E-Mail Address: _jfeldman@sidley.com_

rev. 01/08 AK

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 12-1081, 12-1213, 12-2536

Short Caption: Leimkuehler v. American United Life Insurance Company

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   **[   ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   American United Life Insurance Company

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Sidley Austin LLP; Barnes & Thornburg LLP; Hahn Loeser & Parks LLP

(3)   If the party or amicus is a corporation:

   i)   Identify all its parent corporations, if any; and

      OneAmerica Financial Partners, Inc. (wholly owned by American United Mutual Insurance Holding Company)

   ii)   list any publicly held company that owns 10% or more of the party's or amicus' stock:

      None

Attorney's Signature:  s/  Sarah H. Newman          Date: August 8, 2012

Attorney's Printed Name: Sarah H. Newman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** ☒

Address: Sidley Austin LLP, One South Dearborn, Chicago IL 60603

Phone Number: 312-853-7000          Fax Number: 312-853-7036

E-Mail Address: snewman@sidley.com

rev. 01/08 AK

# Table of Contents

**Page**

Table of Authorities ................................................................................................ iii

Jurisdictional Statement ........................................................................................ 1

Statement of the Issues .......................................................................................... 1

Statement of the Case ............................................................................................ 2

Statement of Facts .................................................................................................. 3

Summary of Argument ......................................................................................... 10

Argument................................................................................................................. 12

I.     Standard Of Review................................................................................... 13

II.    AUL Was Entitled To Summary Judgment Because It Did Not Exercise
Control Over Plan Assets. .......................................................................... 14

      A.    ERISA's Fiduciary Standards.................................................... 14

            1.    The "to the extent" limitation. ....................................... 16

            2.    The "exercise" limitation of subsection (i). .................. 16

      B.    Application Of The "Control Over Plan Assets" Provision In The
Revenue Sharing Context. .......................................................... 17

      C.    The District Court Correctly Applied The Foregoing Principles
When It Held That AUL Is Not A Fiduciary. ........................... 18

      D.    Even If Plaintiff Is Correct About The District Court's Analysis Of
"Discretionary," That Would Not Change The Result. .......................... 22

      E.    AUL Did Not Exercise Control Over Plan Assets Merely By Using
A Separate Account........................................................................ 28

      F.    AUL Did Not Exercise Authority Over Plan Assets By Retaining –
But Not Exercising – The Ability To Delete Or Substitute
Investment Options. ...................................................................... 30

1.     This argument has been waived. ....................................................... 31

2.     The Department of Labor's theory is inconsistent with ERISA . 33

III.    AUL Stated Counterclaims For Contribution, Indemnity, And Breach Of Fiduciary Duty. ................................................................................................. 37

    A.     The District Court Correctly Denied Plaintiff's Motion To Dismiss AUL's Counterclaims For Contribution And Indemnity Under ERISA. ......................................................................................................... 37

        1.     This Court has recognized a right to pursue contribution and indemnity under ERISA. .............................................................. 37

        2.     Plaintiff's reading of the scope of contribution and indemnity under ERISA is unduly narrow. ..................................................... 39

    B.     In The Alternative, AUL May Maintain Counterclaims For Common Law Contribution And Indemnity. ........................................... 41

    C.     AUL Stated A Claim For Breach Of Fiduciary Duty. ............................. 42

IV.    The District Court Erred In Denying AUL's Motion For Fees And Costs. ...... 43

    A.     Plaintiffs In ERISA Class Actions Should Not Be Permitted To Avoid Paying Costs Merely Because Their Counsel Have Not Agreed To Pay. ............................................................................................. 43

    B.     AUL Is Entitled To Fees And Costs Under ERISA. ............................... 45

    C.     In The Alternative, AUL Is Entitled To Taxable Costs Under 28 U.S.C. § 1920 And Federal Rule Of Civil Procedure 54(d). .............. 47

Certificate of Compliance With Rule 32(a) ...................................................... 49

Certificate of Compliance With Circuit Rule 31(e) ........................................ 50

Certificate of Service ........................................................................................... 51

Circuit Rule 30(d) Statement ............................................................................. 53

Required Short Appendix

# Table of Authorities

**Page(s)**

## CASES

*Beddall v. State Street Bank & Trust Co.*,
 137 F.3d 12 (1st Cir. 1998).................................................................. 24, 29

*Bittner v. Sadoff & Rudoy Indus.*,
 728 F.2d 820 (7th Cir. 1984) ...................................................................... 45

*Briscoe v. Fine*,
 444 F.3d 478 (6th Cir. 2006) ................................................................ 24, 25

*Brock v. Robbins,*
 830 F.2d 640 (7th Cir. 1987) ...................................................................... 40

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) .................................................................................... 13

*Chao v. Day*,
 436 F.3d 234 (D.C. Cir. 2006) ............................................................. 25, 26

*Chemung Canal Trust Co. v. Sovran Bank/Maryland*,
 939 F.2d 12 (2d Cir. 1991) .................................................................... 41, 42

*Chicago Bd. Options Exchange, Inc. v. Connecticut Gen. Life Ins. Co.*,
 713 F.2d 254 (7th Cir. 1983) ................................................................. 33, 34

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
 474 F.3d 463 (7th Cir. 2007) ...................................................................... 16

*Christopher v. SmithKline Beecham Corp.*,
 132 S. Ct. 2156 (2012) ........................................................................... 35, 36

*Coldesina v. Simper*,
 407 F.3d 1126 (10th Cir. 2005) .................................................................. 26

*Delta Air Lines, Inc. v. Colbert*,
 692 F.2d 489 (7th Cir. 1982) ...................................................................... 47

*Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*,
 515 F.3d 718 (7th Cir. 2008) ...................................................................... 32

*Ed Miniat, Inc. v. Global Life Insurance Group, Inc.*,
 805 F.2d 732 (7th Cir. 1986) ...................................................................... 33

*Fehribach v. Ernst & Young LLP*,
 493 F.3d 905 (7th Cir. 2007) ...................................................................... 44

*Firestone Tire & Rubber Co. v. Bruch*,
 489 U.S. 101 (1989) .................................................................................... 38

*Free v. Briody*,
 732 F.2d 1331 (7th Cir. 1984) .......................................................37-39, 41-42

*Graphic Communication Int'l Union Upper Midwest Local 1-M Health & Welfare Plan*
  *v. Bjorkedal,* No. 04-3371, 2006 WL 3511767 (D. Minn. Dec. 6, 2006) ............ 33, 36

*Haddock v. Nationwide Financial Services, Inc.,*
  272 F.R.D. 61 (D. Conn. 2010) ...................................................................... 42, 46

*Hamilton v. Carell,*
  243 F.3d 992 (6th Cir. 2001) ............................................................................ 16

*Hardt v. Reliance Standard Life Ins. Co.,*
  130 S. Ct. 2149 (2010) ..................................................................................... 45

*Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.,*
  57 F.3d 608 (7th Cir. 1995) ........................................................................ 16, 34

*Hecker v. Deere & Co.,*
  556 F.3d 575 (7th Cir. 2009) ................................................................*passim*

*Holmstrom v. Metro. Life Ins. Co.,*
  615 F.3d 758 (7th Cir. 2010) ........................................................................... 14

*IT Corp. v. General American Life Insurance Co.,*
  107 F.3d 1415 (9th Cir. 1997) .............................................................. 24, 25, 27

*Kaczmarczyk v. INS,*
  933 F.2d 588 (7th Cir. 1991) ........................................................................... 32

*Loomis v. Exelon Corp.,*
  658 F.3d 667 (7th Cir. 2011) ..................................................................... 45, 47

*LoPresti v. Terwilliger,*
  126 F.3d 34 (2d Cir. 1997) ........................................................................ 25, 26

*Mertens v. Hewitt Assocs.,*
  508 U.S. 248 (1993) ......................................................................................... 23

*Midwest Community Health Service, Inc. v. American United Life Insurance Co.,*
  255 F.3d 374 (7th Cir. 2001) ..................................................................... 30, 34

*Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan,*
  666 F.3d 68 (2d Cir. 2011) .............................................................................. 44

*National Commission on Egg Nutrition v. FTC,*
  570 F.2d 157 (7th Cir. 1977) ........................................................................... 32

*Nebraska v. Wyoming,*
  507 U.S. 584 (1993) ......................................................................................... 13

*Pakovich v. Verizon LTD Plan,*
  653 F.3d 488 (7th Cir. 2011) ........................................................................... 45

*Pegram v. Herdrich,*
  530 U.S. 211 (2000) .................................................................................... 2, 16

*Pierce v. Underwood,*
  487 U.S. 552 (1988) ......................................................................................... 46

iv

*Pohl v. Nat'l Benefits Consultants, Inc.*,
  956 F.2d 126 (7th Cir. 1992) ............................................................ 23, 29

*Rand v. Monsanto Co.*,
  926 F.2d 596 (7th Cir. 1991) ..................................................................... 43

*Rivera v. City of Chicago*,
  469 F.3d 631 (7th Cir. 2006) ............................................................. 14, 44

*Schindler v. Seiler*,
  474 F.3d 1008 (7th Cir. 2007) .................................................................. 14

*Schulist v. Blue Cross of Iowa*,
  717 F.2d 1127 (7th Cir. 1983) .................................................................. 16

*Sosebee v. Astrue*,
  494 F.3d 583 (7th Cir. 2007) .................................................................... 14

*Sullivan v. Finkelstein*,
  496 U.S. 617 (1990) ................................................................................ 48

*Summers v. State Street Bank & Trust Co.*,
  453 F.3d 404 (7th Cir. 2006) .................................................................... 38

*Taylor v. KeyCorp*,
  680 F.3d 609 (6th Cir. 2012) .................................................................... 32

*Todd v. Societe Bic, S.A.*,
  21 F.3d 1402 (7th Cir. 1994) .................................................................... 38

*Trustees of the Graphic Comm'ns Int'l Union Upper Midwest Local 1M Health &*
  *Welfare Plan v. Bjorkedal*, 516 F.3d 719 (8th Cir. 2008)........................ 16, 36

*Trustmark Life Ins. Co. v. Univ. of Chicago Hosps.*,
  207 F.3d 876 (7th Cir. 2000) .................................................................... 45

*U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*,
  582 F.3d 1131 (10th Cir. 2009) ................................................................ 32

*Walsh v. Principal Life Ins. Co.*,
  266 F.R.D. 232 (S.D. Iowa 2010)............................................................. 17

*White v. Sundstrand Corp.*,
  256 F.3d 580 (7th Cir. 2001) ........................................................ 12, 43, 44

*Wilczynski v. Lumbermens Mut. Cas. Co.*,
  93 F.3d 397 (7th Cir. 1996) ...................................................................... 14

*Wilson v. DaimlerChrylser Corp.*,
  236 F.3d 827 (7th Cir. 2001) .................................................................... 13

## STATUTES

28 U.S.C. § 1291 ....................................................................................... 1

28 U.S.C. § 1331 ....................................................................................... 1

v

28 U.S.C. § 1920 ....................................................................... 2, 12, 47

29 U.S.C. § 1001 ............................................................................... 1

29 U.S.C. § 1002 ....................................................................... 14, 15

29 U.S.C. § 1109 ............................................................................. 43

29 U.S.C. § 1113 ............................................................................. 35

29 U.S.C. § 1132 ................................................................ 1, 2, 11, 45

Ind. Code § 27-1-5-1 ........................................................................ 6

## Other Authorities

29 C.F.R. § 2509.75-8 ..................................................................... 24

77 Fed. Reg. 5632 (Feb. 3, 2012) ........................................................ 8

Fed. R. Civ. P. 54(d) ................................................................. 2, 11, 47

Fed. R. Civ. P. 56(a) ....................................................................... 13

Restatement (Second) of Trusts § 258 ................................... 38, 39, 40, 41

Restatement (Third) of Trusts § 106 .................................................. 44

## Jurisdictional Statement

The jurisdictional statement of plaintiff-appellant Robert Leimkuehler is not complete and correct. Plaintiff brought this lawsuit against defendant-appellee American United Life Insurance Company ("AUL") under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* – specifically, pursuant to 29 U.S.C. § 1132(a)(2) and (a)(3). The district court had jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

The district court entered final judgment in favor of AUL on January 6, 2012. JA 4. Plaintiff filed a timely notice of appeal on January 10, 2012, JA 1, and AUL filed a timely notice of cross-appeal on January 25, 2012, SA 20-21, with respect to the district court's dismissal of certain of AUL's counterclaims. AUL filed a second timely notice of cross-appeal on June 28, 2012, SA 22-23, to challenge the district court's denial, in an order entered on May 31, 2012, of AUL's motion for attorneys' fees and costs. This Court has appellate jurisdiction over the consolidated appeals pursuant to 28 U.S.C. § 1291. The consolidated appeals were taken from a final judgment disposing of all parties' claims or, in the case of the appeal from the denial of AUL's motion for fees and costs, a final post-judgment order.

## Statement of the Issues

1.  Whether the district court correctly held that AUL did not exercise control over the assets of a 401(k) plan, as required to make AUL a fiduciary under ERISA, when AUL offered plaintiff, the plan's trustee, a pre-selected menu of mutual funds

with pre-selected share classes, and AUL invested participants' money in the share classes of the mutual funds chosen by plaintiff and the participants.

2.  Whether AUL stated viable counterclaims for contribution, indemnity and breach of fiduciary duty where plaintiff admitted in his complaint that he breached his fiduciary duties to his 401(k) plan. (This question need not be addressed if the Court affirms the entry of summary judgment in favor of AUL.)

3. Whether the district court erred in denying AUL's motion for fees and costs under ERISA, 29 U.S.C. § 1132(g)(1), and under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920, based on plaintiff's alleged impecuniousness, class counsel's refusal to pay any award, and the district court's view that plaintiff's lawsuit was "substantially justified."

## Statement of the Case

Two claims are at issue in this appeal: breach of fiduciary duty and engaging in prohibited transactions. Both arise under ERISA, and both require plaintiff, the trustee of a 401(k) plan, to prove that AUL was acting as a fiduciary when it received "revenue sharing" payments from mutual fund companies. The district court found that AUL does not exercise control over plan assets and hence is not a fiduciary. Because plaintiff's claims foundered on the "threshold question" of fiduciary status, *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000), the district court held that AUL was entitled to summary judgment.

AUL has cross-appealed from the dismissal of certain of its counterclaims. AUL has standing to pursue its counterclaims only if it is found to be a fiduciary, so if this

2

Court agrees that AUL did not act as a fiduciary in any relevant way, the viability of the counterclaims need not be addressed. If they are addressed, this Court should allow AUL to proceed with its counterclaims.

Finally, the district court denied AUL's motion for fees and costs. The ruling on costs was based on plaintiff's alleged inability to pay any award (and class counsel's refusal to pay). The ruling on fees was based on the district court's conclusion that plaintiff's case, while ultimately unsuccessful, was substantially justified.

## Statement of Facts

The district court correctly observed that "[v]ery few facts are actually in dispute, and no material ones." RSA 3 n.1.[1]

### A.     The Leimkuehler Plan

Plaintiff Robert Leimkuehler is the trustee and the named fiduciary of the Leimkuehler, Inc. Profit Sharing Plan ("Leimkuehler Plan" or "Plan"). SA 1 ¶ 1. The Plan is a 401(k) plan. SA 9 ¶ 44. To save for retirement, employees of Leimkuehler, Inc. – plaintiff's company – can invest a portion of their wages in the Plan on a tax-deferred basis. JA 107 (Tr. 20:4-17); Pl. Br. at 3.

---

[1] Although the joint appendix includes copies of the district court's rulings on summary judgment and AUL's counterclaims, those copies are difficult to read. They are reproduced in more legible form in AUL's required short appendix ("RSA"). Other record citations in this brief are to the joint appendix ("JA") or AUL's supplemental appendix ("SA").

### B.    AUL

AUL is an insurance company based in Indianapolis. In addition to selling other insurance products, it provides services to 401(k) and other retirement plans. Its retirement plan services fall into two broad categories: (1) a means to invest the plan's assets, which in the case of Leimkuehler Plan is a group variable annuity contract that allows investments in mutual funds, and (2) record-keeping and other administrative services. JA 517 ¶ 3; see also SA 2 ¶¶ 7-8.

### C.    AUL's Investment Menu

Like other 401(k) service providers, AUL does not offer its clients all 7,500-plus mutual funds that exist in the marketplace. Pl. Br. at 7 n.1; JA 150. When plaintiff first hired AUL in 2000, AUL's investment menu included 34 options. JA 630 (Group Annuity Contract & New Business Agreement). This number has grown over time, reaching nearly 400 by August 2010. JA 165, 172-80.

In general, AUL has not removed investment options from its menu. As AUL's Vice President of Product and Marketing Strategies explained, even when a mutual fund's performance consistently falls below expectations, the fund "would still stay out there for investment purposes" and "be made available" to plans. JA 600 (Tr. 42:17-43:2). "[I]t's up to the company [the plan sponsor] to decide whether or not they want to make a change." *Id.* (Tr. 43:2-4).

All of the options on AUL's menu are associated with a particular share class of a particular mutual fund. JA 406-11 (listing share classes associated with each mutual

fund on AUL's menu); JA 165, 172-80 (same); JA 570 (Tr. 15:1-5) (plaintiff's expert admitting that AUL chooses "the name of the fund and the particular share class that would be made available"). The difference between share classes of a mutual fund is the "expense ratio," i.e., the percentage of assets that the mutual fund company retains as its fee. Pl. Br. at 7-8. Expense ratios are "not taken from participant accounts," but instead are "netted from the investment return at the fund complex." JA 604 (Tr. 84:4-21). They are publicly disclosed in mutual fund prospectuses and were disclosed to the Leimkuehler Plan. JA 703 ¶ 13; JA 612-13.

Different mutual fund companies describe their share classes in different ways; there is no uniform nomenclature. For example, American Funds refers to R-1, R-2, R-3, R-4 and R-5 share classes, while Fidelity refers to A and T share classes for its Fidelity Advisor funds and to "Initial Class" for its Fidelity Variable Insurance Products ("VIP") funds. JA 148-49, JA 175-76, SA 24-71(Fidelity VIP prospectus). AUL did not specifically tell plaintiff which share classes (R-2, A, etc.) were on AUL's menu. It did, however, tell him the expense ratios associated with each investment option. JA 612-13, JA 449-50.

### D.    Separate Accounts

Because AUL is an insurance company, its services to 401(k) plans are sold through an insurance product – specifically, a group variable annuity contract. The assets in the contract are held in a "separate account." JA 617 § 1.15. In the insurance world, a separate account is just what it sounds like – "an account that is kept separate

from the insurance company's general account, beyond the reach of the company's creditors." JA 561 ¶ 3; JA 654 § 9.15; Ind. Code § 27-1-5-1 (Class 1(c)).

"In the 401(k) context, a separate account works very much like a mutual fund: Both allow investors to experience the return of underlying securities without having to buy them directly." JA 561 ¶ 4. Rather than receiving shares of a mutual fund, participants receive "accumulation units" in the separate account. JA 635 § 1.3. The value of each accumulation unit is calculated according to a formula set out in the group variable annuity contract. JA 647 § 5.3.

The operation of the separate account is straightforward and ministerial. An employer collects payroll deductions from plan participants, adds any matching contributions, and then sends the money to AUL. "Once AUL has received the contributions, it invests them in mutual funds in accordance with directions that plans and plan participants have previously provided." JA 561-62 ¶ 5; JA 663; JA 607 (Tr. 109:2-17); JA 165.

### E.     AUL's Services To Mutual Funds

When participants invest through an AUL-served 401(k) plan, AUL performs many of the functions that would otherwise be performed by the fund company. JA 702 ¶ 11. For example, if a participant invested directly in a mutual fund, the fund company would have to provide record-keeping services. AUL provides those services instead. JA 703-04 ¶ 14. Similarly, if each 401(k) plan invested directly with a mutual fund, the fund company would have to process each purchase and sale. JA 705

¶ 18. But when plans invest through AUL, the trades of all plans are aggregated and submitted as a single transaction, thereby reducing the fund company's transaction costs. *Id.*

In addition, part of a mutual fund's expense ratio is used to pay brokers who sell the funds, along with other marketing and distribution costs. When plans invest through AUL, fund companies do not incur these costs. JA 597 (Tr. 27:10-22).

As compensation for these services, mutual fund companies share revenue with AUL (and other service providers) based on a percentage of the assets invested by plan participants. JA 704-06 ¶¶ 16-18; JA 575 (Tr. 60:1-12). These payments come from the assets of the mutual fund companies and are paid directly to AUL – no revenue sharing flows through an AUL separate account. JA 561-62 ¶ 5. AUL uses revenue sharing to reduce fees that would otherwise be charged directly to plans or participants. JA 609-10 (Tr. 134:13-19, 139:21-23); *see also* JA 706-08 ¶¶ 20-24.

Fund companies offer different levels of revenue sharing, with the level varying by share class. In other words, the more money the mutual fund companies receive, the more they are willing to share. The mutual funds on AUL's investment menu tended to have neither the highest nor the lowest expense ratios. As a result, AUL received neither the most nor the least amount of revenue sharing offered by the fund company for any given fund. For example, AUL's menu includes the "R-3" and "R-4" classes of the American Funds mutual funds, which pay revenue sharing of 50 and 25 basis points, respectively. JA 165, 174-75; JA 214. The menu did not include the "R-

1," "R-2," or "R-5" share classes, which paid revenue sharing of 100 basis points, 75 basis points, and zero basis points, respectively. *Id*.

### F.    Disclosure Of Revenue Sharing

AUL's disclosure of revenue sharing has no bearing on the question of fiduciary status, the main question presented in this appeal. However, because both plaintiff and the Department of Labor chastise AUL for its disclosure practices (Pl. Br. at 9-10; DOL Br. at 10, 14, 17-18, 25), we address that issue briefly.

No law or regulation required service providers like AUL to disclose revenue sharing until July 1, 2012, when a new Department of Labor regulation went into effect. 77 Fed. Reg. 5632 (Feb. 3, 2012). Yet AUL began disclosing revenue sharing to new clients several years earlier, in 2007, and began disclosing the amount of revenue sharing in new contracts in 2010. JA 518 ¶ 5. Before then, the extent to which revenue sharing was disclosed varied from plan to plan, depending on whether the plan trustee asked about the practice and whether the independent advisors who sell AUL's services chose to discuss the issue. SA 72-74 (Grimme Decl.); SA 75-77 (Jackson Decl.); SA 78-81 (Wright Decl.); SA 82-84 (Kemp Decl.).

Plaintiff points to an e-mail from 2005 as evidence that AUL hid revenue sharing from its clients. Pl. Br. at 12. This is not true. The employee who wrote the e-mail explained that AUL "has never attempted to hide revenue sharing." SA 88 ¶ 14. Rather, when the employee wrote the e-mail in question, he was concerned that

without a full explanation, a client might erroneously assume that revenue sharing was an additional cost – on top of the expense ratio. *Id.* ¶ 16.

### G.    Plaintiff's Choice Of Investment Options

As the named fiduciary of the Leimkuehler Plan, plaintiff was responsible for deciding which subset of the investment options on AUL's menu would be offered to participants in the Leimkuehler Plan. In making his initial selection, plaintiff retained the services of Marco Mazzone, an independent advisor – not an employee of AUL – who provides advisory services to 401(k) plans. JA 585 (Tr. 40:5-21); JA 558 ¶ 3. Over the years, Mr. Mazzone has continued to advise Mr. Leimkuehler about changes to the Plan's investment line-up. JA 585 (Tr. 40:5-21); JA 592 (Tr. 66:12-22, 67:2-5); JA 693.

For its part, AUL provided plaintiff with data about the investment options he had chosen. *E.g.*, JA 425-63. That data included the funds' investment performance and expense ratios. *Id.* AUL also provided plaintiff with the total expenses, expressed as a percentage of funds invested, associated with the Plan. JA 449-50 (KT743-44). Thus, as the district court observed, AUL disclosed "the bottom-line figure that participants who choose to invest in the fund must pay." RSA 4.

### H.    Changes In The Leimkuehler Plan's Investment Options

Plaintiff directed AUL to change the Plan's investment options on at least two occasions. JA 661; JA 686-92; JA 694-97. Plaintiff also admitted that "ultimately, AUL had to hear from you [Mr. Leimkuehler] telling AUL you wanted to make certain changes in investment options before they could be made." JA 588 (Tr. 74:10-14).

With two exceptions, AUL has never implemented changes to the Plan's investment options – either by changing mutual funds or by changing share classes within a mutual fund – unless directed by plaintiff. The first exception occurred in 2000, the second in 2011. JA 519 ¶ 13. Plaintiff was notified of the first change (from one S&P 500 index fund to another) in 2000, nine years before he filed this lawsuit. JA 698. In the 2011 change, neither the original fund nor the substituted fund paid revenue sharing. JA 519 ¶ 13. In all other instances, AUL invested participants' money in the share class of the mutual fund they (and plaintiff) had chosen. JA 561-62 ¶ 5.

## Summary of Argument

Plaintiff has abandoned, and thereby waived, most of the arguments he made to the district court. He has abandoned the argument that AUL exercised control over plan assets by creating a menu of investment options; he has abandoned the theory that AUL gave the Leimkuehler Plan "investment advice," as that term is used in ERISA; and he has abandoned the theory that AUL had discretionary authority with respect to the administration of the Plan. Instead, plaintiff argues, broadly, that the "ability" to exercise control over plan assets – not just the actual exercise of control – is sufficient to support his claims. Pl. Br. at 23, 25. In particular, he contends that the use of a separate account as the vehicle for the Leimkuehler Plan's investments meant that AUL had the "ability" to exercise control over plan assets and, hence, acted as a fiduciary.

10

The Department of Labor, taking a different tack, argues that AUL might have exercised control over plan assets because of a provision in the group variable annuity contract that authorized AUL to change the Leimkuehler Plan's investment options. But plaintiff never presented this theory to the district court, so it has been waived, and it would be inappropriate to allow an *amicus* to raise an argument not presented below.

It is a meritless theory in any event. Like plaintiff's "separate account" theory, the Department of Labor's theory depends on the idea that the *ability* to exercise control over plan assets is the touchstone of fiduciary status. It is not. According to the words of the statute, the standard is the "exercise" of control.

If the Court reaches the question of AUL's right to pursue contribution, indemnity and breach of fiduciary duty counterclaims, it should allow AUL to pursue those claims. Plaintiff admitted in his complaint that he breached his fiduciary duty by failing to adequately monitor the expenses incurred by his 401(k) plan, so the only questions are whether contribution and indemnity are colorable claims in this context and whether AUL may sue plaintiff for breaching his fiduciary duty. They are and it may. This Court has long held that an ERISA fiduciary may seek indemnification or contribution from co-fiduciaries under ERISA, while other courts have found such a right under the common law. Either way, the claims are viable.

Finally, AUL should be awarded its attorneys' fees and costs under ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1), or at least its taxable costs under Fed. R.

11

Civ. P. 54(d) and 28 U.S.C. § 1920. The district court erroneously concluded that plaintiff's professed inability to pay – and class counsel's refusal to pay – meant that AUL could not recover any costs. But class counsel's failure to agree to bear litigation costs is "a poor reason to drop the costs back in defendants' laps." *White v. Sundstrand Corp.*, 256 F.3d 580, 586 (7th Cir. 2001). Moreover, because this Court's decision in *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir.), *reh'g denied*, 569 F.3d 708 (7th Cir. 2009), and other authorities discussed below clearly controlled the decision in this case, plaintiff's position was not "substantially justified," and AUL's motion for fees should have been granted.

## Argument

This lawsuit challenges an established and widespread practice in the 401(k) retirement services industry. *See generally* JA 702, 704-06 (¶¶ 10, 16-18); JA 575 (Tr. 60:1-12). Plaintiff claims that AUL acted as a fiduciary and breached its fiduciary duty (and, relatedly, engaged in prohibited transactions) by using a separate account to hold 401(k) assets and by accepting revenue sharing payments without crediting them, dollar for dollar, to the Leimkuehler Plan. The Department of Labor has submitted an *amicus* brief in support of plaintiff's claim that there is a triable issue regarding AUL's fiduciary status, based on contractual language that gives AUL the ability to substitute one investment option for another.

Under ERISA, however, it is not enough to show that, hypothetically, the defendant *could* have become a fiduciary if it had taken actions that it did not take.

12

Instead, plaintiff must show that the defendant *was in fact* acting as a fiduciary when taking the challenged action. The district court thus correctly held that AUL did not exercise control over plan assets: AUL faithfully followed the investment directions of plaintiff and the participants in the Leimkuehler Plan. It did not exercise control over plan assets when it did so – and the possibility that it *could* have done something different does not change that conclusion.

## I.    Standard Of Review.

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the burden of proof at trial would fall on the non-moving party, the movant is not required to prove a negative, but instead may point to a lack of evidence supporting an essential element of the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden then shifts to the non-moving party to present admissible evidence that raises a genuine issue of fact. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).

Plaintiff asserts that "[a] district court's findings of fact on a motion for summary judgment are reviewed under the clearly erroneous standard," Pl. Br. at 16, but that is not correct. In the vast majority of cases, including this one, district courts do not make "findings of fact" at the summary judgment stage. The case plaintiff cites for the contrary proposition, *Wilson v. DaimlerChrylser Corp.*, 236 F.3d 827, 828-29 (7th Cir. 2001), involved the unusual situation of a trial court deciding a motion for summary

judgment after hearing testimony in a "trial-like" proceeding. Nothing like that happened here. Accordingly, the district court's summary judgment ruling is subject to the usual *de novo* review. *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007).

Also subject to *de novo* review is the district court's ruling on AUL's counterclaims, which were addressed via a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 401 (7th Cir. 1996).

Finally, the district court's ruling on AUL's motion for attorneys' fees and costs is subject to review for abuse of discretion, as is its denial of taxable costs. *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 779 (7th Cir. 2010) (fees and costs under ERISA); *Rivera v. City of Chicago*, 469 F.3d 631, 636 (7th Cir. 2006) (taxable costs). However, to the extent that the decision on fees and costs was based on the district court's understanding of the law, this Court reviews that aspect of the decision *de novo* "because a district court's application of an erroneous view of the law is by definition an abuse of discretion." *Sosebee v. Astrue*, 494 F.3d 583, 586 (7th Cir. 2007).

## II. AUL Was Entitled To Summary Judgment Because It Did Not Exercise Control Over Plan Assets.

### A. ERISA's Fiduciary Standards

Plaintiff's theory of fiduciary status departs from fundamental principles of ERISA. Among those principles is the statute's definition of "fiduciary," 29 U.S.C. § 1002(21)(A). AUL took pains *not* to become a fiduciary: It expressly disclaimed fiduciary status in its contract with plaintiff, it was not named in any plan document as

14

a fiduciary, and – most importantly – it never did anything that might make it a fiduciary under the statutory definition.

ERISA's definition of "fiduciary" has three subsections, but in this appeal plaintiff has waived any reliance on the latter two (the "investment advice" subsection and the "discretionary authority over plan administration" subsection). That leaves the "control over plan assets" provision: "a person is a fiduciary with respect to a plan to the extent … (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i).

Subsection (i) addresses two distinct activities: management of the plan, and management or disposition of the plan's assets. Because the activity at issue in this case involves plan assets, the relevant portion of the definition is the part that concerns the management or disposition of plan assets. The parties (and the Department of Labor) appear to be in agreement on this point.

Subsection (i) makes clear that *potential* authority or control over plan assets is not enough to trigger fiduciary status. Instead, in evaluating whether conduct is fiduciary in nature, two key limitations need to be considered: A defendant is a fiduciary only (a) "to the extent" it has authority or control over plan assets, and (b) it actually "exercises" that power.

1.    *The "to the extent" limitation.*

A person is a fiduciary only "to the extent" he exercises authority or control over

plan assets. As a result, plaintiff must show that AUL "was acting in its capacity as a

fiduciary at the time it took the actions that are the subject of the complaint." *Chicago*

*Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471-72 (7th Cir.

2007); *see also Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131 (7th Cir. 1983). "In

every case charging breach of ERISA fiduciary duty, … the threshold question is not

whether the actions of some person employed to provide services under a plan

adversely affected a plan beneficiary's interest, but whether that person was acting as a

fiduciary (that is, was performing a fiduciary function) when taking the action subject

to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

2.    *The "exercise" limitation of subsection (i).*

"Because this subsection imposes a fiduciary duty on those not named as a

fiduciary, its reach is limited to circumstances where the individual actually exercises

some authority." *Trustees of the Graphic Comm'ns Int'l Union Upper Midwest Local 1M*

*Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008). It is not enough

for plaintiff to point to a contractual provision that *could* give AUL the *ability* to

exercise control over plan assets. *Harris Trust & Sav. Bank v. Provident Life & Accident*

*Ins. Co.*, 57 F.3d 608, 613 (7th Cir. 1995) (holding that insurer's contractual right to

advance benefits did not make it a fiduciary under subsection (iii) where it did not

exercise that right); *Hamilton v. Carell*, 243 F.3d 992, 998-1000 (6th Cir. 2001). Put

16

differently, "functional fiduciary status pursuant to § 1002(21)(A)'s 'plan assets' clause must involve actual control over the assets at issue, and therefore, cannot be based solely on an ambiguous degree of influence over another person who retains control over the assets." *Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 250 (S.D. Iowa 2010).

Carrying out the lawful directions of others is not the exercise of authority or control within the meaning of subsection (i). As the Department of Labor noted in an advisory opinion, an entity that merely carries out others' directions about investing in mutual funds does not exercise authority or control. Opinion 97-15A, 1997 ERISA LEXIS 18, at *10-11 (May 22, 1997) (the "Frost Letter").

### B.     Application Of The "Control Over Plan Assets" Provision In The Revenue Sharing Context.

The net effect of applying subsection (i) to the facts here is that plaintiff must demonstrate that AUL – as opposed to plaintiff or the Leimkuehler Plan – exercised control that *caused* the Plan to invest in a *specific* mutual fund that, in turn, paid revenue sharing to AUL. The Department of Labor has emphasized this point in the revenue sharing context. It has issued a trilogy of opinion letters evaluating whether service providers that receive revenue sharing are fiduciaries engaged in prohibited transactions. *See* Frost Letter; Opinion 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997) (the "Aetna Letter"); Opinion 2003-09A, 2003 ERISA LEXIS 11 (June 25, 2003) (the "ABN AMRO Letter"). Although the business models varied, the theme of the opinion letters is the same: A service provider acts as a fiduciary only when it

"exercise[s] any authority or control to cause a plan to invest in a mutual fund that pays a fee to the [service provider] in connection with the plan's investment." Frost Letter, at *10; *accord* Aetna Letter, at *10 (analyzing whether an entity "does not exercise any authority or control to cause a plan to invest in a mutual fund"); ABN AMRO Letter, at *13 (no violation "when the decision to invest in such funds is made by a fiduciary who is independent of" the service provider).

### C.     The District Court Correctly Applied The Foregoing Principles When It Held That AUL Is Not A Fiduciary.

AUL did not cause the Leimkuehler Plan to invest in any particular investment options. Instead, AUL offered a menu of investment options, each of which was associated with a particular share class of a particular mutual fund. It was up to plaintiff to select which subset of those options he wanted to include on the Leimkuehler Plan's menu. It was indisputably plaintiff, not AUL, who decided when and whether to make changes to that smaller menu. JA 588 (Tr. 74:10-14); *see also* JA 570 (Tr. 16:17-22). And when the participants and plaintiff made their respective choices, AUL always honored them. JA 561-62 ¶ 5. As plaintiff admits in his brief, AUL invests 401(k) money "in mutual funds chosen by the Plan and its participants from among those AUL offers." Pl. Br. at 3. *See also id.* at 10 (noting that AUL allocates participant contributions to "the investment accounts they have selected").

In all of these respects, this case is indistinguishable from *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir.), *reh'g denied*, 569 F.3d 708 (7th Cir. 2009), where this Court

18

rejected the claim that a different service provider, Fidelity, became an ERISA fiduciary by offering a menu of investment options. Relying on *Hecker*, the district court aptly stated that "when a provider offers plan sponsors a pre-selected universe of mutual funds of pre-selected share classes that plan sponsors can choose to include in their plans or not, the provider is not exercising 'authority or control respecting management or disposition of plan assets' under 29 U.S.C. § 1002(21)(A)(i)." RSA 15.

Other than a passing (and inaccurate) reference in a footnote,[2] plaintiff waits until page 29 of his brief before addressing *Hecker*. When he gets around to it, his attempt to distinguish *Hecker* is based on wishful thinking, not legal reasoning. In plaintiff's view, *Hecker* actually *supports* his view of this case because it merely rejected the "factual premise" of plaintiffs' argument, which plaintiff characterizes as being that Fidelity "'exercised the necessary control to confer fiduciary status by its act of limiting Deere's selection of funds through the Trust Agreement to those managed by Fidelity Research.'" Pl. Br. at 32 (quoting *Hecker*, 556 F.3d at 583). Far from rejecting the "factual premise" (which would be an odd thing to do when reviewing a dismissal under Rule 12(b)(6), the procedural posture in *Hecker*), this Court found that this factual premise, if true, did not add up to fiduciary status. Immediately after the sentence plaintiff quotes, the Court asked, "But what if it did? Plaintiffs point to no authority that holds that limiting funds to a sister company automatically creates

---

[2] Plaintiff claims that *Hecker* did not involve any question about the "control over plan assets" subsection of the definition of fiduciary, Pl. Br. at 22 n.6, but it clearly did. *Hecker*, 556 F.3d at 583-84.

discretionary control sufficient for fiduciary status." 556 F.3d at 583. In other words, the Court accepted plaintiffs' factual premise – that the service provider, Fidelity, required the plan sponsor to choose from only Fidelity funds – but held that this did not make Fidelity a fiduciary.

Plaintiff goes on to claim that "Deere was not stuck with the investment options proposed by Fidelity." Pl. Br. at 33. This is also incorrect. Plaintiff is confusing two fundamentally different concepts: (1) assembling an overall menu of investment options to offer to 401(k) plans, which both AUL and Fidelity did, and (2) selecting the particular investment options from that overall menu to include on a plan's smaller menu for participants in that plan, which neither AUL nor Fidelity did. It was undisputed in *Hecker*, as it is here, that the service provider created an overall menu of investment options, but this Court held that doing so did not make the service provider a fiduciary. 556 F.3d at 583. The fact is, Deere was "stuck with" Fidelity-branded mutual funds – a narrower universe of investment options than the one AUL offers – but that did not persuade this Court that Fidelity might be a fiduciary.

Rather than being troubled by Fidelity offering of a finite number of choices, *Hecker* inquired whether Fidelity had "the final say on which investment options will be included" in the plan. *Id.* The complaint alleged that Fidelity "'played a role in the selection of investment options,'" but this was not enough because "Deere had 'final authority.'" *Id.* at 583-84. So too here: It was Mr. Leimkuehler, not AUL, who

20

exercised final authority over which options to add or delete from his plan. JA 588 (Tr. 74:10-14); *see also* JA 570 (Tr. 16:17-22).

Finally, plaintiff argues that AUL is a fiduciary because it selects the share classes of the mutual funds that are included on its menu of investment options. Pl. Br. at 3, 29-34. But the selection of share classes is just an inherent part of putting together the overall menu of investment options, so it is difficult to understand why plaintiff treats it as being somehow distinct. It is not as though AUL decides which share class to purchase *after* it receives money from Plan participants. As the district court observed, AUL decides which share classes it "will" – future tense – "make available" to plans. RSA 4; Pl. Br. at 15. And plaintiff's counsel acknowledged that there was no evidence that AUL ever changed share classes in any of the funds that plaintiff had chosen. SA 95.[3]

Plaintiff purports to find significance in the fact that AUL did not tell plaintiff which share classes were on its menu (Pl. Br. at 29-34), but he ignores the fact that AUL *did* disclose the expense ratios of each fund on its menu. RSA 4. Disclosing the share class (R-3, A, and so on) would have been worse than useless, as the nomenclature each fund company uses is inconsistent and "decidedly unhelpful." *See*

---

[3] Without citing anything in the record, plaintiff asserts that AUL "does not make its actual share class selection until it places the buy order for a particular share class." Pl. Br. at 33. There is no good faith basis for this assertion. Moreover, although plaintiff briefly made a similar unsupported assertion at the very end of his oral argument on class certification (SA 101-02), he did not brief or argue the issue on summary judgment, and AUL had no opportunity to respond. Accordingly, plaintiff waived this argument by not fairly raising it before the district court.

Christopher J. Traulsen, A Call for Share Class Sanity, available at www.ftadviser.com/2012/03/19/ifa-industry/product-providers/a-call-for-share-class-sanity-aOf8iN4u8HxM7H2tqgLG7N/article.html (accessed Aug. 8, 2012). "'B' shares at one firm might be retail and carry a relatively high fee, while at another, 'B' shares might be institutional and carry a low fee but a very high minimum investment." *Id.* What matters to plan trustees like plaintiff is not the alpha-numeric nomenclature of share classes, but rather the expense ratio associated with that share class. Plaintiff's entire argument on this point is thus a classic red herring.

In short, AUL's selection of share classes for its investment menu is no more significant, from an ERISA perspective, than its selection of mutual funds for that same menu. The district court correctly concluded that "if a provider can limit the mutual funds it will offer to plan sponsors, it can likewise select to only deal with particular share classes." RSA 15.

### D.    Even If Plaintiff Is Correct About The District Court's Analysis Of "Discretionary," That Would Not Change The Result.

The district court held that control over plan assets must be "discretionary" in order to create fiduciary status. RSA 12. Plaintiff attacks this conclusion as being contrary to ERISA's language and the precedent of other Courts of Appeal. Pl. Br. at 17-23.

Plaintiff's argument is straightforward. He notes that subsection (i) of ERISA's definition of "fiduciary" creates fiduciary status when a person exercises "any

22

discretionary authority or discretionary control" over plan management, but omits "discretionary" when it refers to the exercise of "any authority or control" over plan assets. Pl. Br. at 18. Other circuits have followed the obvious logic and concluded that "any" exercise of authority or control over plan assets is enough. Pl. Br. at 19-21(collecting cases).

On this semantic point, plaintiff is probably right. (He errs, however, in stating that Congress replaced the word "discretionary" with "any" in the second prong of subsection (i), *see* Pl. Br. at 15; in fact, "any" appears in both prongs.) In fairness to the district court, however, both the Supreme Court and this Court have indicated that "discretion" is the key to fiduciary status under the "control over plan assets" subsection of ERISA's definition of "fiduciary." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (stating that ERISA fiduciaries include anyone who "exercises *discretionary control or authority* over the plan's management, administration, *or assets*") (emphasis added); *Hecker*, 556 F.3d at 583 (referring to "*discretionary control* sufficient for fiduciary status") (emphasis added); *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992) ("ERISA makes the existence of discretion a *sine qua non* of fiduciary duty.").

Indeed, in its *amicus* brief supporting plaintiff in this case, the Department of Labor warns against "permitting an entity to assert broad *discretionary* authority over a plan's investments without being subject to ERISA's fiduciary obligations." DOL Br. at 2 (emphasis added); *see also id.* at 12 (asserting that AUL had "broad discretionary

23

authority"). There is also authority for the idea that ERISA requires a showing of

"meaningful" control over plan assets (*Beddall v. State Street Bank & Trust Co.*, 137 F.3d

12, 18 (1st Cir. 1998), and Brief of Secretary of Labor as Amicus Curiae in Support of

Plaintiffs-Appellants at 23, *Hecker v. Deere & Co.*, Nos. 07-3605, 08-1224 (7th Cir. Mar.

19, 2008) (JA 157), or, as stated in two of the cases that plaintiff cites, "practical"

control (*IT Corp. v. General American Life Insurance Co.*, 107 F.3d 1415, 1421 (9th Cir.

1997), and *Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006)).

All that having been said, the debate about what adjective, if any, should be read to

precede "authority or control" is largely beside the point. It begs the question of the

meaning of "exercising authority or control." The courts have uniformly held that the

phrase connotes more than having plan assets in hand and investing them as directed.

As the First Circuit has observed, "the mere exercise of physical control or the

performance of mechanical administrative tasks generally is insufficient to confer

fiduciary status." *Beddall*, 137 F.3d at 18. *See also* 29 C.F.R. § 2509.75-8 (non-fiduciary

functions include "[c]ollection of contributions and application of contributions as

provided in the plan").

Thus, when courts – including the district court here – read the word

"discretionary" (or some similar adjective) into the "control over plan assets"

subsection, this is just a way of drawing a distinction between two very different

things: (1) a person investing plan assets as he chooses (or, more sinister, absconding

with them), and (2) a person investing plan assets in accordance with the lawful

24

directions of plan fiduciaries and participants. In the former situation the person is exercising control over plan assets; in the latter situation he is not.

This distinction is uncontroversial and well established, and it appears quite clearly in the cases that plaintiff features in his brief. The basis for finding fiduciary status in these cases was not that the defendants had physical possession of plan assets, as plaintiff claims (*see* Pl. Br. at 23-25); it was that the defendants took those assets for themselves or otherwise misused them, rather than following the directions of plans or participants:

- In *Chao v. Day*, 436 F.3d 234, 235 (D.C. Cir. 2006), the defendant was supposed to use plan assets to buy insurance for the plans, but instead "kept the money and provided the plans with fake insurance policies."

- In *IT Corp.*, the defendant had to "exercise[] its judgment" in determining whether medical insurance claims were "doubtful." 107 F.3d at 1418.

- In *Briscoe*, the defendant exercised control over plan assets by "unilaterally" disposing of them, 444 F.3d at 492, "allotting to itself an administrative fee and returning the remaining funds after its relationship with the Company terminated." *Id.* at 494.

- In *LoPresti v. Terwilliger*, 126 F.3d 34, 37 (2d Cir. 1997), one defendant was found to be a fiduciary because rather than forwarding plan assets to

25

a pension fund, he used them to pay creditors who "'screamed the loudest.'" Another defendant, in contrast, was *not* a fiduciary because, although authorized to sign checks, he had "'no responsibility for determining which of the company's creditors would be paid or in what order,'" and so "did not exercise authority or control regarding the disposition of plan assets." *Id.* at 40-41.

- In *Coldesina v. Simper*, 407 F.3d 1126 (10th Cir. 2005), the defendant diverted plan assets to a third party without authorization from the trustee. "As such," the court concluded, the defendant "assumed control over disposition of the funds by exercising his own judgment *rather than acting at the plan's direction.*" *Id.* at 1134 (emphasis added).

The courts in some of these cases have gone out of their way to emphasize the limits of their holdings. In *Chao*, for example, the court "hasten[ed] to emphasize the limited scope of today's holding," and stated that it did not "extend fiduciary status to every person who exercises 'mere possession, or custody' over the plans' assets." 436 F.3d at 237. This caveat – never mentioned in plaintiff's brief – puts the lie to plaintiff's claim that *Chao* makes the question of whether AUL merely followed directions "irrelevant." Pl. Br. at 24-25. What *Chao* found "irrelevant" was whether the defendant "exercised 'discretion' in his thievery." 436 F.3d at 236. Had the defendant followed directions and purchased insurance, rather than stealing the money and providing "fake insurance policies," *id.* at 235, he would not have been a fiduciary.

26

Similarly, in *IT Corp.*, 107 F.3d at 1419, the court observed that the mere ability to transfer plan assets does not equate to fiduciary status: "If a fiduciary tells a bookkeeping service to send a check for $950 to Mercy Hospital, the bookkeeping service does not thereby become a fiduciary." By the same token, if AUL invests money as directed by plan participants, it does not thereby become a fiduciary.

The application of the foregoing principles to this case is straightforward. If, hypothetically, AUL had taken the Leimkuehler Plan's assets and, rather than investing them as directed, bought lottery tickets, or invested in Guatemalan coffee futures, or donated money to the Indianapolis Zoo, it would have been exercising control over plan assets. But that is not remotely what happened. What happened was that AUL faithfully followed the investment directions of participants in the Leimkuehler Plan. *See* Pl. Br. at 4; JA 561-62 (¶ 5); JA 607 (Tr. 109:2-17); JA 679 (providing that "AUL has no discretion or authority to alter or decline to execute any Plan participant investment instruction received through the AUL TeleServe system, unless such instructions are impossible to execute"), JA 640 ("Contributions received at the Home Office shall be credited to the appropriate subaccounts of each of the Participant Accounts as directed by the Contractholder in written allocation instructions"). It did not "exercise control" over plan assets when doing so.

27

### E.   AUL Did Not Exercise Control Over Plan Assets Merely By Using A Separate Account.

Plaintiff's theories about how AUL became a fiduciary have shifted throughout this litigation. He has abandoned one of the primary theories he presented to the district court, namely that AUL became a fiduciary by offering its clients an investment menu that did not include every mutual fund in the marketplace. The district court held, and plaintiff apparently now agrees, that this theory was foreclosed by *Hecker*. RSA 14-15. Plaintiff has also waived his arguments that AUL became a fiduciary by providing "investment advice" or having discretionary authority over plan administration. Plaintiff now focuses on the theory that AUL exercised control over plan assets because those assets are held in an AUL separate account – an account that, in plaintiff's words, AUL "owns and over which it has exclusive control." Pl. Br. at 3. *See also id.* at 8-10, 25-29.

In plaintiff's view, the mere "ability" to move assets is enough to confer fiduciary status. Pl. Br. at 23, 26. This is a silly argument. If that were the rule, then the service provider in *Hecker*, Fidelity, had to be a fiduciary, notwithstanding this Court's ruling to the contrary – Fidelity had plan assets in hand, and it therefore had the "ability" to transfer them. For that matter, if a 401(k) plan sent contributions via mail or Federal Express, then the U.S. Postal Service and Federal Express would thereby become fiduciaries, as they too would have the "ability" to "move and transfer assets." Pl. Br. at 23.

Moreover, the operation of the separate account is mechanical and is governed by contract; it involves sophisticated bean-counting, not the exercise of control. Plaintiff claims that AUL determines the value of accumulation units "inside a black box and behind a curtain," Pl. Br. at 28, but in fact the value of the units is prescribed by the contract between AUL and the Leimkuehler Plan. *See* JA 647 § 5.3 ("Value of Accumulation Units"). Indeed, all of the things that plaintiff says amount to the exercise of control over plan assets (Pl. Br. at 25-27) are ministerial in nature. As a result, they are not fiduciary acts. "Without more, mechanical administrative responsibilities (such as retaining the assets and keeping a record of their value) are insufficient to ground a claim of fiduciary status." *Beddall*, 137 F.3d at 20. *See also Pohl*, 956 F.2d at 129 (holding that "clerical, mechanical, ministerial" functions are not fiduciary functions).

In light of the undisputed record, the district court correctly held that AUL's use of a separate account did not mean that AUL exercised control or authority over plan assets. "There is no evidence," the district court observed, "that AUL absconded with any Plan assets, that AUL provided accumulation units for one fund when the participants thought they were buying another, that AUL purchased a share class that resulted in higher expenses than the expenses disclosed to the participant, or that AUL failed to properly apply the valuation formula to the accumulation units – a ministerial calculation." JA 23. Plaintiff challenges none of these undisputed facts, nor could he in good faith. They are dispositive on this theory.

29

Finally, *Midwest Community Health Service, Inc. v. American United Life Insurance Co.*, 255 F.3d 374 (7th Cir. 2001) (cited in Pl. Br. at 12; DOL Br. at 11, 20-21), does not help plaintiff's cause. The Court in that case found that AUL might be a fiduciary because it unilaterally amended a contract, thereby altering its value. *Id.* at 379. Plaintiff has not even alleged, much less shown, that AUL did anything like that here. He points to contractual rights that AUL allegedly *could* have exercised, Pl. Br. at 16, 32-33, but never explains how or when AUL *actually exercised* those rights – much less in a way that has anything to do with revenue sharing.

### F. AUL Did Not Exercise Authority Over Plan Assets By Retaining – But Not Exercising – The Ability To Delete Or Substitute Investment Options.

In an *amicus* brief, the Department of Labor asserts a variation on the "ability to control" theme. It argues that, because AUL reserved the right to change its investment line-up, it exercised control over plan assets. Specifically, the Department claims that section 3.3 of the group variable annuity contract arguably confers fiduciary status – regardless of whether AUL ever actually exercised the rights reserved in that provision.

Section 3.3 provides in relevant part as follows (JA 619-20):

3.3    Addition, Deletion, or Substitution of Investments:

(a) We reserve the right, subject to compliance with applicable law, to make additions to, deletions from, substitution for, or combinations of, the securities that are held by any Investment Account or that any Investment Account may purchase. We reserve the right to eliminate the shares of any of the eligible Mutual Funds, Portfolios, or other

entities and to substitute shares of, or interests in, another Mutual Fund, Portfolio, or another investment vehicle, for shares already purchased or to be purchased in the future under the contract, if the shares of any or all eligible Mutual Funds, Portfolios, or other entities are no longer available for investment or if further investment in any or all eligible Mutual Funds, Portfolios, or other entities becomes inappropriate in view of the purposes of the contract. Where required under applicable law, we will not substitute any shares attributable to your interest in any Investment Account without notice, your approval or Participant approval, or prior approval of the Securities and Exchange Commission or a state insurance commissioner, and without following the filing or other procedures established by applicable state insurance regulators.

(b) We reserve the right to establish additional Investment Accounts, each of which would invest in the corresponding Mutual Fund, Portfolio, or other entity, or in other securities or investment vehicles. We reserve the right to eliminate or combine existing Investment Accounts if marketing, tax, or investment conditions so warrant. We also reserve the right to provide other Investment Options under this contract at any time. Subject to any required regulatory approvals, we reserve the right to transfer assets from any Investment Account to another separate account of AUL or Investment Account.

The problem with the Department of Labor's argument is two-fold. First, plaintiff did not raise it below, and *amici* cannot revive arguments that have been waived. Second, the argument reads the word "exercise" out of the statute.

1.     *This argument has been waived.*

In his summary judgment brief in the district court, plaintiff never cited section 3.3 when he argued that AUL exercised authority or control over plan assets. SA 121-37. This was a tacit concession that to "exercise" authority or control, a contractual right must actually be exercised. Thus, rather than contending that the mere existence of

section 3.3 amounted to the exercise of control over plan assets, plaintiff referred to that contractual provision only in connection with his arguments that AUL became a fiduciary by giving him "investment advice" and by having discretionary authority over plan administration, *id.* at 29, 31-32; RSA at 23 – arguments that plaintiff has waived on appeal. As a result, plaintiff has waived any theory that section 3.3 created fiduciary status under a "control over plan assets" theory. *See, e.g.*, *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008); *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1142 (10th Cir. 2009) (noting that "[a] party does not preserve an issue merely by advancing a related theory before the district court").

The Department of Labor has no more right to raise a waived issue than does plaintiff. The Sixth Circuit recently confronted this very issue after the Department submitted an *amicus* brief, and followed its rule that "'[w]hile an *amicus* may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties.'" *Taylor v. KeyCorp*, 680 F.3d 609, 615 n.6 (6th Cir. 2012) (quoting *Cellnet Commc'ns, Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998)).

This Court stated in *Kaczmarczyk v. INS*, 933 F.2d 588, 595 n.5 (7th Cir. 1991), that it "will reach issues raised solely by *amicus* filings in our discretion," but the authority it cited for this rule, *National Commission on Egg Nutrition v. FTC*, 570 F.2d 157, 160 n.3 (7th Cir. 1977), states that an argument not raised by the parties is "not properly before us." That earlier authority is the better approach. It comports with the

32

principle that district courts ought to decide cases – and address the theories that underlie them – in the first instance.

2.     *The Department of Labor's theory is inconsistent with ERISA.*

The Department claims that AUL's reservation of rights in section 3.3 arguably makes AUL a fiduciary. But with two irrelevant exceptions (discussed below), AUL has never *exercised* its rights under this provision. The absence of exercise is dispositive. As one court observed in an analogous context: "[T]he [plaintiffs'] argument boils down to this: [Defendant] *could* have exercised authority and control over plan assets," but "ERISA provides that an officer is a fiduciary only to the extent he … *exercises* any authority or control respecting management or disposition of assets." *Graphic Communication Int'l Union Upper Midwest Local 1-M Health & Welfare Plan v. Bjorkedal,* No. 04-3371, 2006 WL 3511767, at *11 (D. Minn. Dec. 6, 2006), *aff'd,* 516 F.3d 719 (8th Cir. 2008). In other words, hypothetical control is not the same as the exercise of control, and "could have" is not the same as "did."

ERISA addresses concrete actions, not contractual rights that may or may not be exercised. As this Court has observed, "It is important to remember that if [the defendant] is a fiduciary because of the power to amend, this status only governs actions taken in regard to amending the contract and does not impose fiduciary obligations upon [the defendant] when taking other actions." *Chicago Bd. Options Exchange, Inc. v. Connecticut Gen. Life Ins. Co.*, 713 F.2d 254, 259 (7th Cir. 1983). The Department misreads *Connecticut General* and *Ed Miniat, Inc. v. Global Life Insurance*

33

*Group, Inc.*, 805 F.2d 732 (7th Cir. 1986), as holding that the contractual ability to exercise control is all that is required to create a potential claim for breach of fiduciary duty. DOL Br. at 20-21. In fact, what made the defendants in those cases (and in the *Midwest Community Health Service* case discussed above) potentially liable was their *actual exercise* of contractual rights. In *Connecticut General*, the defendant unilaterally amended a contract, thereby exercising control over a plan asset. 713 F.2d at 255 & 260. Similarly, in *Ed Miniat*, the defendant "unilaterally" reduced the rate of return paid under a contract and increased premium rates under that contract. 805 F.2d at 734.

This case is more like *Harris Trust &Savings Bank v. Provident Life &Accident Insurance Co.*, 57 F.3d 608, 613 (7th Cir. 1995), where an insurer was found *not* to be a fiduciary (under subsection (iii) of the definition of fiduciary) despite having the contractual authority "to advance benefits" under the relevant provision of the plan. Notwithstanding the contract, the record showed that another party "called all of the shots." *Id.* at 618. As a result, the insurer was "not a fiduciary within the meaning of ERISA." *Id.* at 613.

Here, again, there is no evidence that AUL did anything other than invest in the precise share classes of the precise mutual funds that were chosen by plaintiff and the participants in the Leimkuehler Plan. Moreover, the only two instances when AUL actually substituted one mutual fund for another do not give rise to a viable claim, as both plaintiff and the Department concede through their silence. The first substitution occurred in 2000, *see* JA 519 ¶ 13, some nine years before plaintiff filed

his complaint. As a result, any claim is barred by ERISA's six-year statute of repose. 29 U.S.C. § 1113(1). The substitution in 2011 is likewise irrelevant to any claim based on revenue sharing, but for a different reason: Both before and after the change, the mutual fund company in question paid no revenue sharing. JA 519 ¶ 13. Accordingly, the district court correctly held that neither of these substitutions supports a claim under ERISA. RSA 18.

Because the Department's position is inconsistent with ERISA, as well as with its own previous pronouncements on this issue, this Court should not defer in any way to the Department's views. *Cf. Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (giving no deference to Department of Labor's interpretation of its own regulation and finding deference inappropriate when the agency's interpretation is "plainly erroneous or inconsistent with the regulation" or "conflicts with a prior interpretation").

The Department tries to square its current views with what it said in an advisory opinion known as the Aetna Letter, DOL Br. at 22-23, but this effort is utterly unpersuasive. The Aetna Letter stated that "a person would not be exercising discretionary authority or control over the management of a plan or its assets solely as a result of deleting or substituting a fund from a program of investment options and services offered to plans, provided that the appropriate plan fiduciary in fact makes the decision to accept or reject the change." Aetna Letter, 1997 ERISA LEXIS 17, at *15. But if the service provider never "deletes or substitutes a fund," it is hard to see

35

how the Aetna Letter provides fair notice that the Department might nevertheless consider the service provider to be a fiduciary. Moreover, the Aetna Letter never suggests that the plan fiduciary's veto rights must be embedded in a contract, as the Department now seems to believe. DOL Br. at 22. If a contract provided veto rights but the service provider ignored them, the existence of these rights would not protect the service provider from becoming a fiduciary. On the flip side, if a contract does not provide veto rights, but the service provider extends them anyway (or, as in this case, does not exercise the underlying right in the first place), it would not be acting as a fiduciary. The Department's current fixation on contractual language, rather than actual facts and actions, cannot be reconciled with its prior pronouncements. *Cf. Christopher*, 132 S. Ct. at 2166-69.

Finally, the Department appears to contend that AUL could have invested in less expensive share classes than plaintiff and the participants in the Leimkuehler Plan had chosen, and that by failing to do so it exercised control over plan assets. DOL Br. at 14, 18. This is a bizarre argument. In *Hecker*, the service provider could have invested participants' money in less expensive share classes – or for that matter could have sent each of the participants a check, or bought them a pony – but its failure to do these things did not make it a fiduciary. Neither does AUL's failure to purchase share classes that were less expensive than those chosen by plaintiff and the participants in the Leimkuehler Plan. *See Bjorkedal*, 516 F.3d at 733 ("An act of omission fails to

36

satisfy the requirement that the individual *exercise* discretionary authority over plan assets.") (emphasis in original).[4]

## III.   AUL Stated Counterclaims For Contribution, Indemnity, And Breach Of Fiduciary Duty.

AUL cross-appealed the dismissal of certain of its counterclaims, and is contesting plaintiff's arguments about other counterclaims that the district court sustained, to protect itself in the event that the summary judgment ruling is reversed. If this Court affirms the summary judgment ruling, it need not address the issues discussed in this section.

### A.     The District Court Correctly Denied Plaintiff's Motion To Dismiss AUL's Counterclaims For Contribution And Indemnity Under ERISA.

1.     *This Court has recognized a right to pursue contribution and indemnity under ERISA.*

More than 25 years ago, this Court stated that "an ERISA fiduciary 'may seek indemnification or contribution from co-fiduciaries.'" *Free v. Briody*, 732 F.2d 1331, 1337 (7th Cir. 1984) (citation omitted). The Court reasoned that ERISA explicitly protects trustees from the misconduct of fellow trustees, and observed that "Congress evidenced an intent to apply general trust principles to the trustee provisions of ERISA." *Id.* The Court held that "ERISA grants the courts the power to shape an

---

[4] The Department cites *Free v. Briody*, 732 F.2d 1331 (7th Cir. 1984), for the proposition that "a fiduciary may be liable for nonfeasance." DOL Br. at 18. This is true enough, but it says nothing about whether a person is a fiduciary in the first place. *Free* did not address that question.

award so as to make the injured plan whole while at the same time apportioning the damages equitably between the wrongdoers." *Id.*

Plaintiff tries to downplay the significance of *Free*. First, he cites *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 413 (7th Cir. 2006), for the proposition that the availability of contribution and indemnity under ERISA is still an open question in this Circuit. Pl. Br. at 37. But *Summers* acknowledged that this part of its opinion was dicta. 453 F.3d at 413. The holding of a Seventh Circuit opinion represents the law of this Circuit. Dictum does not. *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1411 (7th Cir. 1994).

Second, plaintiff contends that *Free* might have been implicitly overruled by subsequent Supreme Court cases that have said that ERISA should not be construed to create remedies that are not authorized by the text of the statute. Pl. Br. at 37-38. Those cases, however, say nothing about contribution or indemnity, and plaintiff ignores the Supreme Court's parallel directive that courts should "develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)). "ERISA abounds with the language and terminology of trust law," *Bruch*, 489 U.S. at 110, and trust law has long permitted fiduciaries to seek contribution or indemnity from co-fiduciaries. *See, e.g.,* Restatement (Second) of Trusts § 258 (1959) (cited with approval in *Free*, 732 F.2d at 1338).

2.     *Plaintiff's reading of the scope of contribution and indemnity under ERISA is unduly narrow.*

There is no dispute that plaintiff owes fiduciary duties to the Plan. SA 1 ¶ 1. And plaintiff has admitted that he breached those duties, in particular his duty to "'defray[] reasonable expenses of administering'" the Plan. *Id.* ¶ 72 (quoting 29 U.S.C. § 1104); *see also id.* ¶ 68(a).

Plaintiff's defense seems to be that it was AUL's fault that he breached his fiduciary duty, *id.*, but the merit of that defense has yet to be determined. Similarly, plaintiff contends that contribution or indemnity may be awarded only "'where a passive trustee seeks indemnification from a more culpable active trustee.'" Pl. Br. at 38 (quoting *BP Corp. N. Am. Inc. Sav. Plan Inv. Oversight Comm. v. Northern Trust Inv., N.A.*, 692 F. Supp. 2d 980, 985 (N.D. Ill. 2010)). But *Free* acknowledged a more general right to "seek indemnification *or contribution* from co-fiduciaries" consistent with "[g]eneral principles of trust law." *Free*, 732 F.2d at 1337-38 (citation omitted; emphasis added).

The general rule, as plaintiff acknowledges, is that "where two trustees are liable to the beneficiary for a breach of trust, each of them is entitled to contribution from the other." Pl. Br. at 38. It may be true, as plaintiff contends, that a fiduciary cannot obtain contribution if he is "substantially more at fault," Restatement (Second) of Trusts § 258(1)(a), but it is hard to see how that question can be resolved on a motion to dismiss. Plaintiff argues that because AUL knew it was receiving revenue sharing,

but plaintiff did not, AUL must be "substantially more at fault." Pl. Br. at 36. This is a non-sequitur. Even if plaintiff was unaware of revenue sharing, he was aware of the "total fee" associated with services to the Plan. *Hecker*, 556 F.3d at 586. In any event, plaintiff's alleged lack of awareness about revenue sharing would not necessarily make AUL "substantially more at fault"; it may just show that plaintiff was not paying enough attention to his duties to the Plan.

Plaintiff also argues that AUL cannot pursue contribution or indemnity because it is "the only fiduciary who profited from its breaches of fiduciary duty and prohibited transactions." Pl. Br. at 39. This is apparently a reference to the Restatement (Second) of Trusts § 258(1)(b), which provides that if one fiduciary "receives a benefit from the breach of trust, the other is entitled to indemnity from him to the extent of the benefit." This provision, however, would come into play only if AUL received a benefit from revenue sharing (it did not, since that money translated into lower fees to the Plan). And the Restatement teaches that "for any further liability, if neither is more at fault than the other, each is entitled to contribution." *Id.* Plaintiff seems to think that there can be no "further liability" beyond AUL's disgorged profits (if any) from revenue sharing. Yet despite plaintiff's focus on "disgorgement," plaintiff also seeks damages (*see* SA 1 ¶¶ 50(xv), 50(xvi), 59, and prayers for relief for Counts I and II) – a remedy that focuses on harm to the Plan, regardless of any benefit to AUL. *Brock v. Robbins,* 830 F.2d 640, 647 (7th Cir. 1987).

Finally, plaintiff asserts that a trustee "who commits a breach of trust in bad faith is not entitled to contribution or indemnity from his co-trustee." Pl. Br. at 40; Restatement (Second) of Trusts §258(2). Again, though, it is hard to see how this rule can be applied at the pleadings stage. The district court correctly held that it cannot.

### B.     In The Alternative, AUL May Maintain Counterclaims For Common Law Contribution And Indemnity.

AUL also asserted counterclaims for common law contribution and indemnity. They were pleaded in the alternative to AUL's counterclaims for contribution and indemnity under ERISA. The district court dismissed the common law claims, finding that they would not "create any broader relief than that *Free* has found ERISA itself already authorizes." JA 69. This is true, and AUL does not seek to pursue the same claims in different garb (one clothed in ERISA, the other in the common law).

As this Court noted in *Free*, however, there are two possible bases for contribution or indemnity under ERISA: "in the underlying statute or within the limited scope of the federal common law." 732 F.2d at 1336. The defendant in *Free* admitted that federal common law did not create indemnity rights, so *Free* did not address that question. *Id.* While *Free* went on to find that contribution and indemnity rights were rooted in ERISA itself, other courts, most notably the Second Circuit (*Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16 (2d Cir. 1991)), have found such rights in federal common law. If this Court were to reach the same conclusion (and

overrule *Free*'s ruling that ERISA itself creates contribution and indemnity rights),

AUL filed its cross-appeal to avoid any risk of waiver or law-of-the-case issues.

### C.    AUL Stated A Claim For Breach Of Fiduciary Duty.

Plaintiff asserts that AUL failed to state a counterclaim for breach of fiduciary duty

because "[t]he only conceivable loss to the Plan" is "the loss AUL caused," and

therefore any success plaintiff may achieve against AUL will make the Plan whole. Pl.

Br. at 41. This argument rests on a flawed premise. In ERISA, as in tort law, a single

loss may be caused by multiple persons. *See, e.g., Free*, 732 F.2d at 1336. AUL's theory

is that, assuming that AUL is liable, AUL *and plaintiff* caused any loss. "Full

responsibility should not depend on the fortuity of which fiduciary a plaintiff elects to

sue." *Chemung Canal Trust Co.*, 939 F.2d at 16.

Equally unavailing is plaintiff's argument that AUL has not alleged enough facts to

plausibly suggest that plaintiff breached his fiduciary duty. Plaintiff has *admitted* that he

breached that duty. SA 16-17 ¶¶ 72, 68(a). As the district court observed, plaintiff's

admission does not "evaporate merely because the Court ultimately dismissed the

count of the Complaint that contained that statement; it remains an admission of a

party opponent." RSA 35, citing Fed. R. Evid. 801(d)(2).

Finally, plaintiff's reliance on *Haddock v. Nationwide Financial Services, Inc.,* 272

F.R.D. 61 (D. Conn. 2010) (cited in Pl. Br. at 42), is misplaced. *Haddock* relied on the

premise that the *only* relief plaintiffs were seeking was disgorgement or restitution (570

F. Supp. 2d at 364), but plaintiff has not limited himself to such a narrow theory.

Plaintiff should be held responsible for his fair share of any loss and, if appropriate, removed as trustee of the Plan. *See* 29 U.S.C. § 1109(a).

**IV.   The District Court Erred In Denying AUL's Motion For Fees And Costs.**

**A.   Plaintiffs In ERISA Class Actions Should Not Be Permitted To Avoid Paying Costs Merely Because Their Counsel Have Not Agreed To Pay.**

The district court erred by allowing plaintiff to avoid paying any costs – not a nickel – based on his alleged inability to pay. By so doing, the court created a one-way ratchet in ERISA class actions, so that losing defendants face a substantial risk of paying plaintiffs' fees and costs, while plaintiffs face no concomitant risk. Whatever merit the district court's approach may have outside the class action context, it finds no purchase in cases where class counsel represent their clients on a contingency fee basis, and may ethically agree to pay costs. *Rand v. Monsanto Co.*, 926 F.2d 596, 600 (7th Cir. 1991). As this Court observed in *White*, 256 F.3d at 586:

> Entrepreneurial attorneys already supply risk-bearing services in class actions. They invest legal time on contingent fee, taking the risk of failure in exchange for a premium award if the class prevails. A suit such as this, designed to generate a substantial financial return, induces lawyers to compete for the opportunity to represent the class. What we held in *Rand* is that, without violating ethical standards, attorneys may agree to bear the risk of a costs award, as well as the risk that their time will go uncompensated. By moving the risk of loss from the representative plaintiffs to the lawyers (who spread that risk across many cases and thus furnish a form of insurance) counsel can eliminate the financial disincentive that costs awards otherwise would create.

Plaintiff's counsel acknowledged that, after AUL moved to recover its fees and costs, their client requested indemnification from them, but they asserted that "[t]here

is no indemnity agreement, and there will not be one." SA 150. As this Court has observed, however, class counsel's failure to agree to bear litigation costs is "a poor reason to drop the costs back in defendants' laps." *White*, 256 F.3d at 586. Here, moreover, because AUL's parent is a mutual company, the costs will ultimately be borne not by shareholders, but by policyholders.

The district court also overlooked the fact that plaintiff brought this case as a representative of a trust, an entity more similar to a corporation than to an individual. Corporations cannot escape cost awards on grounds of indigence (*Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 912-13 (7th Cir. 2007)), and there is no reason why the Leimkuehler Plan should either.

Moreover, plaintiff has not proven that he is unable to pay an award of costs, either personally or from the assets of the Leimkuehler Plan. Plaintiff's assertions to the district court (SA 149) fall short of the detail required to prove inability to pay. *Rivera*, 469 F.3d at 635 (requiring "clear proof" of "dire financial circumstances"). A trustee may be "personally liable" if he is "personally at fault," Restatement (Third) of Trusts § 106(2), and defined contribution plans like the Leimkuehler Plan may be held liable for judgments under ERISA, with liability being spread pro rata among participants' accounts. *See Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 76 (2d Cir. 2011); *see generally id.* at 72-78.

44

### B.     AUL Is Entitled To Fees And Costs Under ERISA.

ERISA provides that a district court may "in its discretion . . . allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The only definitive requirement for such an award is that the party seeking to recover must show "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010). Because the district court granted summary judgment in AUL's favor, AUL unquestionably satisfies this requirement.

This Court has recognized a "modest presumption" in favor of awarding fees in ERISA cases "to the winning party, plaintiff or defendant." *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984). In general, a party is entitled to attorneys' fees unless the losing party's position was "substantially justified." *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 495-96 (7th Cir. 2011).

Some cases have suggested that the inquiry focuses on whether the losing party's position was "taken in good faith" or was "out to harass" the prevailing party. *Id.* But this standard "did not survive *Hardt*." *Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011). As a result, courts may award fees without finding that the losing party "engaged in harassment or otherwise litigated in bad faith." *Id.*

A losing party's position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person." *Trustmark Life Ins. Co. v. Univ. of Chicago Hosps.*, 207 F.3d 876, 884 (7th Cir. 2000), quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"Substantially justified" means "more than merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566.

Here, plaintiff was not substantially justified in suing AUL. Plaintiff's theory that AUL was a fiduciary was clearly foreclosed by *Hecker*, and his attempts to distinguish *Hecker* were indefensible. And for all of the reasons outlined above, plaintiff's theories of fiduciary status were not substantially justified.

The district court pointed to three factors that persuaded it that plaintiff's suit was substantially justified, but none of these factors actually supports that conclusion. First, the district court noted that "relevant authority . . . supported the Trustee's claims," citing *Haddock v. Nationwide Financial Services, Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006). SA 45. But *Haddock* contradicts the binding precedent of *Hecker* and the other cases described above.

Second, the district court stated that "the Department of Labor is threatening suit over the same conduct at issue here." *Id.* This was a reference to a letter from the Department to AUL that had nothing to do with revenue sharing; rather, the letter alleges that AUL improperly complied with a different plan sponsor's request to transfer funds from a forfeiture account. *See* JA 464-66. As the district court noted, the Department's observations were "only preliminary" and were "conclusory with respect to the fiduciary-status issue." RSA 16.

Finally, the district court noted that "AUL's own employees had voiced 'significant reservations about disclosing revenue sharing,' further suggesting that the practice was

not as 'clearly' innocuous as AUL argues." RSA 45 (citations omitted). In fact, the

employee who wrote the quoted email explained that AUL "has never attempted to

hide revenue sharing." SA 88 ¶ 14. More to the point, the disclosure – or not – of

revenue sharing has nothing to do with the threshold, and dispositive, question of

fiduciary status.

### C.    In The Alternative, AUL Is Entitled To Taxable Costs Under 28 U.S.C. § 1920 And Federal Rule Of Civil Procedure 54(d).

In the alternative, AUL sought just over $83,000 for filing fees, deposition

transcripts, and copying costs. Dkt. 197-7. Rule 54(d)(1) provides that "[u]nless a

federal statute, these rules, or a court order provides otherwise, costs – other than

attorney's fees – should be allowed to the prevailing party." "This means that, where

Rule 54(d) applies, the prevailing party is *prima facie* entitled to costs and the losing

party must overcome that presumption." *Delta Air Lines, Inc. v. Colbert,* 692 F.2d 489,

490 (7th Cir. 1982).

Plaintiff may argue that ERISA's fee-shifting provision "provides otherwise," and

that therefore Rule 54(d) does not apply here. This Court expressly left this question

open in *Loomis,* 658 F.3d at 674. The correct answer is that Rule 54(d) applies in

ERISA cases. For one thing, ERISA does not "provide otherwise," e.g., it does not

provide that each party shall bear its own costs, or that only plaintiffs should recover

their costs. Moreover, Rule 54(d) does not stand on its own; it works in tandem with

28 U.S.C. § 1920, which authorizes judges and clerks to "tax as costs" any of the items

listed in that section. *Id.* That statute provides an independent basis for an award of costs. There is no reason why ERISA's fee-shifting provision should displace section 1920. *See, e.g., Sullivan v. Finkelstein*, 496 U.S. 617, 632 (1990) ("statutes *in pari materia* should be interpreted harmoniously").

### Conclusion

This Court should (a) affirm the district court's grant of summary judgment in favor of AUL, and (b) reverse and remand the district court's denial of AUL's motion for attorneys' fees and costs. If the Court reverses the summary judgment ruling, the Court should permit AUL to proceed with its counterclaims, either under ERISA, under the common law, or both.

Dated: August 8, 2012                    Respectfully submitted,

AMERICAN UNITED LIFE INSURANCE
COMPANY


By:   /s/ Eric S. Mattson
          One of its attorneys



Joel S. Feldman
Eric S. Mattson
Sarah H. Newman
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
(312) 853-7036 (facsimile)

48

## **Certificate of Compliance With Rule 32(a)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,940 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Office Word 2007 in 14-point font using Garamond typeface.


By:   /s/ Eric S. Mattson
      Attorney for Defendant-Appellee

## <u>Certificate of Compliance With Circuit Rule 31(e)</u>

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit

Rule 31(e), versions of the brief and all of the supplemental appendix items that are

available in non-scanned PDF format.


By:  <u>/s/ Eric S. Mattson</u>
      Attorney for Defendant-Appellee

## Certificate of Service

Eric S. Mattson, an attorney, hereby certifies that on August 8, 2012, he electronically filed the foregoing Brief of Defendant-Appellee and Cross-Appellant and Required Short Appendix of American United Life Insurance Company with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system. Two copies of the Brief of Defendant-Appellee and Cross-Appellant and Required Short Appendix of American United Life Insurance Company and one copy of the Supplemental Appendix will be served on the following counsel of record by first-class U.S. mail:

Robert L. King
Korein Tillery LLC
505 N. 7th St., Suite 3600
St. Louis, Missouri 63101-1625

Klint L. Bruno
Korein Tillery LLC
205 N. Michigan Ave., Suite 1940
Chicago, Illinois 60601-4269

Kathleen A. DeLaney
DeLaney & DeLaney LLC
3646 N. Washington Blvd.
Indianapolis, Indiana 46205

Eric H. Zagrans
Zagrans Law Firm LLC
24500 Chagrin Blvd., Suite 200
Cleveland, Ohio 44122

M. Patricia Smith
Timothy D. Hauser
Nathaniel I. Spiller
Stephen A. Silverman
U.S. Department of Labor
200 Constitution Ave., N.W., N-4611
Washington, D.C. 20210

By:   /s/ Eric S. Mattson
       Attorney for Defendant-Appellee

## **Circuit Rule 30(d) Statement**

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the Required Short Appendix, the Supplemental Appendix, or the Joint Appendix filed with plaintiff's opening brief.


By:   /s/ Eric S. Mattson
          Attorney for Defendant-Appellee

**REQUIRED SHORT APPENDIX**

# TABLE OF CONTENTS

**DOCUMENTS**                                                      **PAGE NUMBER**

1/5/12 Order Granting AUL's Motion for Summary Judgment (Dkt. 165) ......... RSA1

4/25/11 Order on Motion to Dismiss Counterclaims (Dkt. 75) .......................... RSA27

5/31/12 Order Denying AUL's Motion for Attorneys' Fees and Costs
(Dkt. 210)................................................................................................................ RSA42

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ROBERT V. LEIMKUEHLER, as trustee and on )
behalf of Leimkuehler, Inc., Profit Sharing )
Plan, )
     *Plaintiff,* )
  )
    *vs.* )    1:10-cv-0333-JMS-TAB
  )
AMERICAN UNITED LIFE INSURANCE COMPA- )
NY, )
    *Defendant.* )

## ORDER

Presently before the Court in this action alleging breaches of fiduciary duty under the

Employee Retirement Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, is the Defendant

American United Life Insurance Company's ("AUL") motion for summary judgment.  [Dkt.

127.]

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncon-

troverted and admissible evidence is unnecessary because, as a matter of law, it would conclude

in the moving party's favor.  *See* Fed. R. Civ. Pro. 56.  To survive a motion for summary judg-

ment, the non-moving party must set forth specific, admissible evidence showing that there is a

material issue for trial.  Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).

As the current version Rule 56 makes clear, whether a party asserts that a fact is undis-

puted or genuinely disputed, the party must support the asserted fact by citing to particular parts

of the record, including depositions, documents, or affidavits.  Fed. R. Civ. Pro. 56(c)(1)(A).  A

party can also support a fact by showing that the materials cited do not establish the absence or

RSA1

presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. Pro. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. Pro. 56(c)(4).   Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment.  Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment.  *Id*. at 901.

The key inquiry is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  When conducting this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party."  *Celotex*, 477 U.S. at 330.

## II.
### BACKGROUND

Consistent with the applicable standard of review, the facts that follow are presented in the light most favorable to Plaintiff Robert V. Leimkuehler, who is the trustee of the

RSA2

Leimkuehler, Inc., Profit Sharing Plan (the "Plan").  Unless otherwise stated, all factual disputes are resolved in favor of Mr. Leimkuehler.[1]

### A.  The Plan's Investments in AUL's Separate Account

In 2000, the Plan entered into a group variable annuity contract with AUL.  [Dkt. 128-11.]  Through it, AUL agreed to permit Plan participants to invest their assets "in" certain mutual funds through a "separate account" maintained with AUL, and to perform certain recordkeeping and other administrative services for the Plan.  [*See id.* § 1.15; dkt. 128-1 ¶3.]

The separate account is an account for trading mutual funds that is, for regulatory reasons, separate from AUL's other assets—hence the name "separate account."  [*See* dkt. 134-3 at 7.][2]  AUL divided the separate account into sub-accounts that correspond to the mutual funds that AUL offered to the Plan.  [*Id.*]  For example, the "Alger American Growth" investment account invests only in the "Alger American Growth" mutual fund.  [Dkt. 128-11 at 17.]  AUL's investment accounts are then unitized into "accumulation units," which correspond to the value of shares in the mutual fund and which AUL assigns to participants—from this Plan and others—who invest in the particular investment account.  [*Id.* at 22; dkt. 134-5 at 11.]  Thus, rather than buying "shares" in a mutual fund, participants buy investment units in an account in AUL's name, which in turn buys the shares in the fund, as disclosed in the group variable annuity con-

---

[1] Very few facts are actually in dispute, and no material ones.  Indeed, Mr. Leimkuehler argues that but for his pending class-certification motion, he would have filed a cross-motion for summary judgment on the issue of AUL's fiduciary status.  [Dkt. 136 at 23 n.11.]  At oral argument, the parties agreed that the Court could and should resolve the motion for summary judgment before turning to the motion for class certification.  [Dkt. 163 at 96, 111.]

[2] Insurance is a highly-regulated industry, for the benefit of policyholders.  State law explicitly contemplates allowing insurance companies to provide variable annuities, like the one at issue here, via a separate account—which are "not chargeable with liabilities arising out of any other business the [insurance] company may conduct...which has no specific relation to or dependence upon such account."  Ind. Code § 27-1-5-1 Class 1(c).  ERISA itself also contemplates the use of separate accounts.  *See* 29 C.F.R. § 2510.3-101(h)(1)(iii).

tract and its marketing materials.  [*See* dkt. 128-11 134-3 at 7.]  AUL calculates the daily values of the accumulation units on the basis of a contractually disclosed formula, which accounts for expenses associated with the mutual funds.  [Dkt. 128-11 at §§ 5.3-5.4.]

## B.  AUL's Selection of Share Classes

A mutual fund sells several classes of shares, which differ by the fees and expenses—termed "expense ratio"—that the mutual fund will charge against the fund's assets.   [*See* dkt. 89 at 8; 134-3 at 11.]  Although Plan participants control which mutual fund they want to "buy," via the separate-account procedure described above, [*see* dkt. 128-3 ¶5], AUL alone decides which share class that it will make available through the investment account, [dkt. 135-1 at 8].  It does not specifically disclose to the Plan, or its participants, the different share classes available or the one that it has selected.  [*See* dkt. 134-2 at 35-36.]

AUL does not claim that it selects for inclusion in its 401(k) offerings the share class with the lowest expense ratio.  Rather it claims, and Mr. Leimkuehler does not dispute, that it discloses the total expenses associated with the class of shares it has selected for each mutual fund, in other words, the bottom-line figure that participants who choose to invest in the fund must pay. [*See id.* at 36; 128-10 at 3; 128-16 ¶13.  *See also* dkt. 163 at 29 ("MR. BRUNO:  The trustee gets an annual investment report that discloses…the net expense of the investment…[T]he total number doesn't just include the fund expense ratio, but also includes the administrative charge…that AUL collects.").]

## C.  "Revenue" or "Expense" Sharing

Most, but not all, of the mutual funds that AUL makes available to trustees like Mr. Leimkuehler engage in so-called "revenue," or perhaps more accurately "expense," sharing. [Dkt. 128-1 ¶13 (noting that the Vanguard funds do not pay revenue sharing); 134-3 at 13.]  Un-

RSA4

der that arrangement, mutual fund companies will remit a portion of the expense ratio charged against shares to entities like AUL that agree to invest in the mutual fund companies by letting 401(k) participants "buy" the shares.  [Dkt. 128-9 at 4.]  AUL's proffered justification for engaging in revenue sharing is that the revenue reflects the value AUL provides to the mutual fund for performing administrative services that the mutual fund would otherwise have to perform—and may not in fact want to perform, for example, keeping track of many small accounts.  [Dkt. 128-16 ¶14.]  While Mr. Leimkuehler does not dispute that at least some of the expenses that were shared with AUL offset some of the costs the Plan would have otherwise had to pay AUL, he argues, and AUL does not dispute, that the offset was not completely one-to-one over the period in question.  [*See* dkt. 135-1.]  AUL did not disclose the existence of, or amount to which it engaged in, revenue sharing to Mr. Leimkuehler.  [Dkt. 135-3 at 8.]  Indeed, Mr. Leimkuehler unearthed an internal AUL email in which AUL employees expressed "significant reservations about disclosing revenue sharing" to clients, like Mr. Leimkuehler.  [Dkt. 134-6 at 2-3.]  Among other reasons provided there, the author worried that disclosure would "only confuse[] the analysis of expenses—how the overall fund expense is split has no[] bearing on the total cost to the participants."  [*Id.*]

### D.  AUL's Universe of Mutual Funds

Trustees like Mr. Leimkuehler who choose to have their plans do business with AUL must choose from the limited universe of mutual funds that AUL makes available.  In 2000, when Mr. Leimkuehler first contracted with AUL, it offered only thirty-four funds, a number that grew over time to 383 by 2010.  [Dkt. 128-11 at 17; 128-18 at 15.]  Other than mutual funds offered by Vanguard, [*see* dkt. 128-1 ¶13], AUL requires mutual fund companies who wish to do

- 5 -

RSA5

business with AUL, and by extension with the 401(k) plans it services, to engage in some form of revenue sharing with AUL, [dkt. 134-2 at 20-21].

From the universe of funds that AUL potentially made available, Mr. Leimkuehler had the option to refine the choices and to select the specific funds that he wanted to offer to Plan participants as investment options.   On at least two occasions, [dkt. 128-12; 128-14], Mr. Leimkuehler changed the mix of mutual funds made available for the Plan.  He did so in consultation with his investment advisor, Mr. Mazzone.  [Dkt. 128-6 at 7.]

On two occasions, AUL unilaterally, as permitted under the contract, substituted one fund that it offered for another:  In 2000, it swapped S&P 500 funds, and in 2011, it swapped funds from Vanguard.  [Dkt. 128-1 ¶13.]

### III.
### DISCUSSION

Mr. Leimkuehler has two remaining substantive ERISA claims against AUL.[3]  The first arises under 29 U.S.C. § 1104(a)(1)(A), which requires a fiduciary of a plan to "discharge his duties with respect to [the] plan solely in the interest of the participants and beneficiaries and…for the exclusive purpose of…providing benefits to participants and their beneficiaries; and…defraying reasonable expenses of administering the plan."  His second claim arises under 29 U.S.C. § 1106(b)(3), the so-called prohibited-transaction statute.  That latter statute provides: "A fiduciary with respect to a plan shall not…receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."  *Id.*  Mr. Leimkuehler contends that AUL violated both those statutes through its undisclosed revenue sharing that did not result in a dollar-for-dollar credit against the Plan's ex-

---

[3] In a previous ruling on AUL's motion for judgment on the pleadings, the Court held that a third claim sought only injunctive relief and would "only survive in connection with the substantive claims" set forth above, and the Court dismissed a fourth claim.  [Dkt. 63 at 24.]

penses payable to AUL.[4]  Through the present motion, AUL seeks to establish that it could not have violated the statutes because they only apply to a "fiduciary," and it was not a "fiduciary" with respect to the revenue sharing.

A person, including a corporation like AUL, 29 U.S.C. § 1002(9), can be a fiduciary under ERISA in three ways:

> [A] person is a fiduciary with respect to a plan to the extent
>
> (i)   he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
>
> (ii)  he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
>
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  According to the U.S. Department of Labor (the "DOL"), which has ERISA rulemaking and enforcement authority, applying those provisions "requires an analysis of the types of functions performed and actions taken by the person on behalf of the plan to determine whether particular functions or actions are fiduciary in nature….[The application of the provisions] is inherently factual…."  U.S. D.O.L Opinion Letter 97-16A, 1997 ERISA LEXIS 17, *10-11 (May 22, 1997).  As the Court considers the potential applicability of each subsection of 29 U.S.C. § 1002(21)(A), the Court must and will adhere to the evidentiary record the parties have provided.

Before discussing the three subsections of 29 U.S.C. § 1002(21)(A), the Court must first discuss the "to the extent" limitation that appears in the main text of the section.

---

[4] The U.S. Department of Labor has promulgated a final rule that will go into effect in April 2012 that will generally require plan administrators to disclose revenue sharing, like that which AUL received in this action.  *See* 76 Fed. Reg. 42542 (July 19, 2011) (to be codified at 29 C.F.R. § 2550.408b-2).

### A.  How Does the "To the Extent" Limitation Apply to AUL?

ERISA's inclusion of the "to the extent" limitation in its definition of "fiduciary" reflects a congressional desire to make "people…fiduciaries when they do certain things but…entitle[] [them] to act in their own interests when they do others." *Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994) (citation omitted).  Accordingly, when evaluating alleged breaches of fiduciary duty, "the threshold question is…whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

As Mr. Leimkuehler clarified at oral argument, his theory of the case is "share class, share class, share class."  [Dkt. 163 at 24.]  That is, when AUL chose which mutual fund share class to select for inclusion in its investment accounts, it did so on the basis of considerations of revenue-sharing implications, which it neither disclosed to the Plan nor specifically used to provide a dollar-for-dollar credit against the fees that the Plan paid directly to AUL.

Mr. Leimkuehler has argued that the to-the-extent limitation only applies to his claim under 29 U.S.C. § 1104(a)(1)(A) and not to his claim under 29 U.S.C. § 1106(b)(3).  In other words, if AUL is a fiduciary for one purpose then he asks the Court to find it a fiduciary for all purposes for the prohibited-transaction statute.  [*See* dkt. 136 at 38-41.]  The Court cannot do so. The Seventh Circuit has been clear that 29 U.S.C. § 1002(21), which is incorporated by reference into the prohibited transaction statute via its use of the term "fiduciary," 29 U.S.C. § 1106(b)(3), "does not make a person who is a fiduciary for one purpose a fiduciary for every purpose." *Johnson*, 19 F.3d at 1188.  Indeed, the only Seventh Circuit case that Mr. Leimkuehler has attempted to cite in support of that argument, *Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984), actually reinforces the importance of the focus on the to-the-extent limitation—the "key language in

the statutory definition," *id.* at 133.  *See also id.* at 134 ("Because Engle and Libco were fiduciaries with respect to the selection and retention of the plan administrators, the issue here is not whether they were fiduciaries but instead whether their fiduciary duties extended to the Reliable Trust investments in Berkeley, OSI and Hickory.").[5]

In the analysis that follows, the Court will, therefore, evaluate AUL's potential fiduciary status through the lens of Mr. Leimkuehler's stated theory of the case:  When AUL chose which mutual fund share class to select for inclusion in its investment accounts, it did so on the basis of considerations of revenue-sharing implications, which it neither disclosed to the Plan nor specifically used to provide a dollar-for-dollar credit against the fees that the Plan paid directly to AUL.

**B. Does AUL's Revenue Sharing Implicate "Authority or Control Respecting the Management or Disposition of Plan Assets" under 29 U.S.C. § 1002(21)(A)(i)?**

As indicated above, 29 U.S.C. § 1002(21)(A)(i) makes a person a fiduciary "to the extent…[(1)] he exercises any discretionary authority or discretionary control respecting management of such plan or [(2)] exercises any authority or control respecting management or disposition of its assets."  Because Mr. Leimkuehler does not argue that AUL had any discretionary authority or control over the management of the Plan, [*see* dkt. 136 at 20], the Court will only discuss the latter alternative.  In so doing, the Court will first identify the Plan assets at issue and then consider the "extent" to which the evidence shows that the revenue-sharing at issue results from AUL's "exercise[] [of] any authority or control respecting [their] management or disposition."

---

[5] The language that Mr. Leimkuehler quotes in his brief—that the "*per se* rules of [29 U.S.C. § 1106(b)(3)] make much simpler the enforcement of ERISA's more general fiduciary duties," *id.* at 123 (citation omitted)—does nothing to advance his argument because it does not specify *when* a person is a fiduciary.  That analysis is, of course, governed by 29 U.S.C. § 1002(21)(A), which includes the to-the-extent limitation.

### 1.   The Plan Assets at Issue

Mr. Leimkuehler argues that AUL exercises authority or control respecting the management or disposition of two types of Plan assets:  the accumulation units that Plan participants receive in exchange for their contributions and the separate accounts funded with participant contributions.  [*See* dkt. 136 at 20-21.]

AUL does not dispute, [*see* dkt. 143 at 11-12], that both items are Plan assets under ERISA, *see also* 29 C.F.R. § 2510.3-101(h)(1)(iii) ("[W]hen a plan acquires or holds an interest in any of the following entities its assets include its investment and an undivided interest in each of the underlying assets of the entity…[a] separate account of an insurance company…."); *id.* § 2510.3-102(a)(1) ("[T]he assets of the plan include amounts…that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution…to the plan….").

AUL does, however, argue that Mr. Leimkuehler may not rely on a fiduciary theory founded upon AUL's use of separate accounts, which in its view was never pleaded in the Complaint.  [Dkt. 143 at 11.]

While AUL is correct that Mr. Leimkuehler generally may not use his response to the motion for summary judgment to constructively amend his Complaint, *e.g.*, *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 693 (7th Cir. 2010) (collecting cases), Mr. Leimkuehler is not attempting to do so.  His Complaint referenced AUL's use of separate accounts.  [*See* dkt. 1 ¶¶11, 15, 64.]  AUL had notice that they may be, and now are, at issue on summary judgment.  Accordingly, in the analysis that follows, the Court will consider 29 U.S.C. § 1002(21)(A)(i)'s applicability vis-à-vis both the money that AUL receives from the participants (plus any matching employer contributions) and the mutual fund shares that AUL maintains in the separate account.

- 10 -

## 2. The "Extent" to Which AUL "Exercis[es] any Authority or Control Respecting Management or Disposition of [Plan] Assets"

With respect to the remaining part of 29 U.S.C. § 1002(21)(A)(i), which makes a person a fiduciary "to the extent he exercises any authority or control respecting management or disposition of its assets," the parties dispute several aspects of the definition as it applies to AUL's revenue sharing. For analytical convenience, the Court will work backwards through the legal standards governing definition. It will then address the DOL's recent enforcement letter against AUL concerning the United Concrete Waukegan, Inc. 401(k) Retirement Plan (the "United Concrete letter"), [filed at dkt. 151-2], which Mr. Leimkuehler contends should significantly control the Court's analysis.

### a. "Any Authority or Control"

The parties dispute what "any authority or control" means. Specifically, AUL argues that the authority or control over the Plan's assets must be discretionary in nature to potentially come within the definition, thereby precluding instances in which AUL's authority or control is merely ministerial in nature—as when AUL carries out the Plan participants' instructions. [Dkt. 129 at 15.] By contrast, Mr. Leimkuehler argues that "any" authority or control means what it says, so even ministerial authority or control will suffice.

While Mr. Leimkuehler has identified several out-of-Circuit authorities that he claims support his interpretation of the statute, his authorities are not controlling here. The Seventh Circuit has, on multiple occasions, made clear that discretion lies at the heart of ERISA fiduciary status:

> A fiduciary is an agent who is required to treat his principal with utmost loyalty and care—treat him, indeed, as if the principal were himself. The reason for the duty is clearest when the agent has a broad discretion the exercise of which the principal cannot feasibly supervise, so that the principal is at the agent's mercy. The agent might be the lawyer, and the principal his client; or the agent might be

RSA11

> an investment adviser, and the principal an orphaned child. If the agent has no discretion and the principal has a normal capacity for self-protection, ordinary contract principles should generally suffice. *At all events, ERISA makes the existence of discretion a sine qua non of fiduciary duty.* 29 U.S.C. § 1002(21)(A).

*Pohl v. Nat'l Benefits Consultants*, 956 F.2d 126, 128-129 (7th Cir. 1992) (emphasis added and one citation omitted). *Accord Hecker v. Deere & Co.* ("*Hecker I*"), 556 F.3d 575, 583 ("In order to find that they were 'functional fiduciaries,' we must look at whether either Fidelity Trust or Fidelity Research exercised discretionary authority or control over the management of the Plans, the disposition of the Plans' assets, or the administration of the Plans.") *reh'g denied Hecker v. Deere & Co.* ("*Hecker II*") 569 F.3d 708 (7th Cir. 2009); *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004) ("[A] person is deemed a fiduciary only 'to the extent' he or she exercises discretionary authority…." (citation omitted)); *Midwest Cmty. Health Serv. v. Am. United Life Ins. Co.*, 255 F.3d 374, 376-377 (7th Cir. 2001) ("[B]ecause AUL had discretionary authority over the contract in its ability to amend the value of the contract, AUL is an ERISA fiduciary." (collecting cases)).

In light of the relevant authority from the Seventh Circuit, the Court need not and will not discuss Mr. Leimkuehler's other authorities. Until the Seventh Circuit or the Supreme Court hold otherwise—and he makes no argument that either has yet done so—AUL cannot be a fiduciary under 29 U.S.C. § 1002(21)(A)(i) if AUL exercised only non-discretionary authority and control respecting the management or disposition of the Plan's assets.

### b. "Exercises" that Authority and Control

The parties also dispute what it means for a person to "exercise[] any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i).

Mr. Leimkuehler first argues that if a provider like AUL restricts the universe of mutual funds that the provider offers to plan sponsors to chose for inclusion in their plans, the provider

RSA12

has exercised discretionary authority and control over how the plan can invest its assets.  [*See* dkt. 136 at 26-32.]  AUL maintains that *Hecker I*, an ERISA revenue-sharing case, forecloses Mr. Leimkuehler's argument.

AUL is correct.  The Seventh Circuit suggested in *dicta* that plan sponsors can limit the selection of funds available to their plan participants without implicating "authority or control" over plan management or assets.  *Id.* ("We see nothing in [ERISA] that requires plan fiduciaries to include any particular mix of investment vehicles in their plan. That is an issue, it seems to us, that bears more resemblance to the basic structuring of a Plan than to its day-to-day management. We therefore question whether Deere's decision to restrict the direct investment choices in its Plans to Fidelity Research funds is even a decision within Deere's fiduciary responsibilities.").[6] By implication, the Seventh Circuit should express the same skepticism when vendors like AUL restrict the products that they are willing to sell to plan sponsors.[7]  Given Mr. Leimkuehler's inability to point to any Seventh Circuit or Supreme Court authority that would affirmatively approve his argument, [*see* dkt. 136 at 24-30], the Court will follow the Seventh Circuit's technically non-binding lead and reject it, *cf. Hendricks County Rural Electric Membership Corp. v. NLRB*, 627 F.2d 766, 768 n.1 (7th Cir. 1980) ("A dictum in a Supreme Court opinion may be

---

[6] Mr. Leimkuehler has argued that such a proposition is inconsistent with the DOL's official commentary of its regulations. [*See* dkt. 136 at 27 (discussing "footnote 27" in the Final Regulation Regarding Participant Directed Individual Account Plans (ERISA 404(c) Plans), 57 FR 46906-01).]  The Seventh Circuit has obviously, though implicitly, concluded otherwise.  Indeed, the Fifth Circuit has explicitly refused to give that particular commentary any weight.  *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 311 (5th Cir. 2007).

[7] In its opinion denying rehearing, the Seventh Circuit stressed that the plaintiffs did not allege that the mutual funds that were included within the investment universe "were unsound or reckless….They argued…that the Plans were flawed because Deere decided to accept 'retail' fees and did not negotiate presumptively lower 'wholesale fees.'"  *Hecker II*, 569 F.3d at 711.  The Court notes that Mr. Leimkuehler here makes no argument that the mutual funds that AUL offered to him were in any way unsound investments.

brushed aside by the Supreme Court as dictum when the exact question is later presented, but it cannot be treated lightly by inferior federal courts until disavowed by the Supreme Court.").

Otherwise, under Mr. Leimkuehler's view of ERISA, entities like AUL would be forced to offer every mutual fund in the marketplace or face the increased costs—to be passed on to plan participants—that come with being a fiduciary. Both are unpalatable outcomes not required by the plain text of ERISA or binding precedent. *See Hecker II*, 569 F.3d at 711 (emphasizing that *Hecker I* was not meant to endorse the notion that "any Plan fiduciary can insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them" because such a strategy "would place an unreasonable burden on unsophisticated plan participants who do not have the resources to pre-screen investment alternatives."). And persuasive precedent from other jurisdictions likewise suggests the same. [*See* dkt. 143 at 4 (collecting out-of-Circuit cases holding that selecting a universe of funds to offer to a plan is not a fiduciary function).]

AUL does, however, concede—and the Court finds—that the requisite authority and control would be present when it exercises its contractual "right to eliminate the shares of any of the eligible Mutual Funds, Portfolios, or other entities and to substitute shares of, or interest in, another Mutual Fund, Portfolio, or another investment vehicle, for shares already purchased" by Plan Participants, [dkt. 128-11 at 6]. [*See* dkt. 129 at 19.]

While Mr. Leimkuehler contends that the failure to exercise a contractual power to substitute or delete mutual funds that participants have already "purchased" constitutes an exercise of authority of control, [*see* dkt. 136 at 30 (arguing that "[t]he act of limiting the universe is not something AUL does at one discrete point in time; it does so on a constant, ongoing basis.")], the

- 14 -

Court must reject that proposition.  He was unable to cite to any Seventh Circuit or Supreme

Court authority for that novel reading of what it means to "exercise[]" authority or control.  *See*

*American Heritage College Dictionary* (3d ed. 1997) (defining "to exercise" as "[t]o put into

play or operation; employ").  Absent such authority, the Court finds that Congress was clear that

affirmative action is required; omissions do not suffice.  *Trs. of the Graphic Commun. Int'l Un-*

*ion v. Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008) ("An act of omission fails to satisfy the re-

quirement that the individual exercise discretionary authority over plan assets.").

Furthermore, again without citing any authority, Mr. Leimkuehler also argues that when

401(k) plan providers like AUL choose among share classes for inclusion in their pre-selected

menu of options for plan sponsors, the providers are exercising authority and control for the pur-

poses of 29 U.S.C. § 1002(21)(A)(i).  But the Court agrees with AUL, [dkt. 143 at 5 n.2], that if

a provider can limit the mutual funds it will offer to plan sponsors, it can likewise select to only

deal with particular share classes.

In summary, under existing Seventh Circuit law, when a provider offers plan sponsors a

pre-selected universe of mutual funds of pre-selected share classes that plan sponsors can choose

to include in their plans or not, the provider is not exercising "authority or control respecting

management or disposition of plan assets" under 29 U.S.C. § 1002(21)(A)(i).  Providers do,

however, exercise such authority and control when they unilaterally change the investment

choices that participants have already made.

### c.  The United Concrete Letter

After the briefing on summary judgment had been completed, Mr. Leimkuehler requested

and received leave to file supplemental evidence concerning the DOL's United Concrete Letter.

[*See* dkt. 152.]  There, a DOL regional office sent a preliminary enforcement letter dated Sep-

tember 28, 2011, to AUL concerning an AUL offered 401(k) plan that is in all material respects the same as the one at issue here. [*See* dkt. 153-2 *to* -5.] The DOL had been investigating allegations that AUL had knowingly transferred certain plan assets directly to the plan sponsor, in violation of ERISA. [*See* dkt. 151-2 at 3.] According to the enforcement letter, AUL was prohibited from doing so not only because it was a "party in interest" to the plan under 29 U.S.C. § 1002(14)—a status not relevant to this motion—but also because AUL was a "fiduciary" under 29 U.S.C. 1002(21)(A)(i). The only reasoning that the United Concrete letter offered regarding the assertion of fiduciary status was that "AUL was responsible for the selection of investment options that were made available under the [contract] and for adding and deleting investment options available to the Plan." [Dkt. 151-2 at 2.] In Mr. Leimkuehler's view, the DOL's finding should likewise control here with respect to the issue of AUL's fiduciary status under 29 U.S.C. § 1002(21)(A)(i).

After having considered the letter, the Court does not find that it alters any of the legal conclusions above, for several reasons. First, and perhaps most importantly, the letter is only preliminary—a warning of possible litigation rather than a formal ruling of the DOL. Consequently, the letter is not subject to *Chevron* deference.[8] *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (citations omitted) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."). Second, it is essentially conclusory with respect to the fiduciary-status issue, which forms the heart of this action. As such, the letter does not provide the Court with reasoning that might help situate the letter within the contours of existing Circuit precedent. Finally, insofar as the DOL maintains that di-

---

[8] Like all agency documents, it is still "entitled to respectful consideration," *Carter v. AMC LLC*, 645 F.3d 840, 844 (7th Cir. 2011), which the Court has provided to it.

verting plan assets renders a person a fiduciary under 29 U.S.C. § 1002(21)(A)(i), the Court agrees, as did AUL at oral argument, because, as explained above, a diversion constitutes an exercise of discretion.  In this action, however, Mr. Leimkuehler has presented neither argument nor evidence that AUL ever diverted assets from whether Plan participants directed that they be sent.

### 3.  The Evidence Here

Mr. Leimkuehler presents two theories as to why AUL qualifies as a fiduciary under 29 U.S.C. § 1002(21)(A)(i).  First, AUL "established, owns and controls the separate account and its 'investment accounts,' and AUL determines the value of investment account accumulation units."  [Dkt. 136 at 2.]  Second, "AUL selects and limits the investment options available to the Plan."  [*Id.*]

### a.  The Separate Accounts and Investment Accounts

With respect to the first theory, the undisputed evidence establishes that Mr. Leimkuehler is correct as a factual matter.  AUL receives Plan contributions and places them in a separate account, held under AUL's own name, and then allocates the contributions into investment accounts according to the mutual fund that Plan participants choose to "buy."  [*See, e.g.*, dkt, 128-11 at §§ 1.15, 9.1; dkt. 134-3 at 7.]  AUL then determines the value of the accumulation units that participants receive according to a pre-determined, contractually disclosed formula.  [Dkt. 128-11 at §§ 5.3-5.4.]

Except in two instances, which the Court will set aside for the moment, none of those activities render AUL a fiduciary under 29 U.S.C. § 1002(21)(A)(i) as a matter of law.  While the separate accounts and investment accounts are Plan assets, the evidence does not show any exercise of discretion on AUL's part, meaning that AUL exercised none of the required "authority

and control." There is no evidence that AUL absconded with any Plan assets, that AUL provided accumulation units for one fund when the participants thought they were buying another, that AUL purchased a share class that resulted in higher expenses than the expenses disclosed to the participant, or that AUL failed to properly apply the valuation formula to the accumulation units—a ministerial calculation, *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 20 (1st Cir. 1998) ("Without more, mechanical administrative responsibilities (such as retaining the assets and keeping a record of their value) are insufficient to ground a claim of fiduciary status." (citations omitted)).

The narrow two exceptions, which ultimately do not create an issue of fact precluding summary judgment either, occurred when AUL unilaterally substituted one mutual fund that Plan participants had purchased for another. AUL did so in 2000, when it "substituted the SSGA 500 Fund for the Fidelity S&P 500 Fund." [Dkt. 128-1 ¶13.] The other occurred in 2011, when "AUL substituted the Vanguard Insurance Fund Small Company Growth Portfolio for the Vanguard Explorer Fund." [*Id.*] AUL argues, [*see* dkt. 129 at 20], and Mr. Leimkuehler does not dispute, [*see* dkt. 136], that any liability for the first substitution is barred by ERISA's statue of repose, 29 U.S.C. § 1113(1),[9] and that no liability under 29 U.S.C. § 1106(b)(3) can attach for the second because to the extent that AUL exercised control over the Plan assets involving Vanguard funds, neither Vanguard fund involved revenue sharing.

The Court, therefore, finds that AUL is entitled to summary judgment on Mr. Leimkuehler's first theory as to why AUL is a fiduciary under 29 U.S.C. § 1002(21)(A)(i).

---

[9] In connection with the pending motion for class certification, Mr. Leimkuehler briefly argued that no time limit was required for the class definition because of the potential for tolling. [*See* dkt. 122 at 47.] Given that neither Mr. Leimkuehler's papers on summary judgment, nor his oral argument, dispute the time-barred status of the 2000 substitution, the Court can forgo any further discussion of it. *See* Fed. R. Civ. Pro. 56(c)(3) ("The court need consider only the cited materials….").

### b.   The Menu of Mutual Funds

Mr. Leimkuehler also correctly argues that the undisputed evidence establishes that AUL limits the mutual funds that he may select for inclusion in the Plan.   In 2000, when Mr. Leimkuehler initially contracted with AUL, he understood and agreed that AUL's universe of mutual funds was limited to thirty four, which were disclosed.   [Dkt. 128-11 at 17.]   By 2010, that universe had grown to 383, [dkt. 128-18 at 15], still a small fraction of the thousands of funds available in the marketplace, *Hecker I*, 556 F.3d at 586.

As discussed above, however, merely limiting the universe of funds an entity will offer, and their share classes, do not render the entity a fiduciary under 29 U.S.C. § 1002(21)(A)(i). When AUL did so here, it did not exercise the requisite discretionary authority and control over the ultimate disposition of Plan assets because Plan participants ultimately decided for themselves whether or not to invest in a particular mutual fund.   AUL merely followed their directions.

### C. Does AUL's Revenue Sharing Implicate any "Investment Advice" Under 29 U.S.C. § 1002(21)(A)(ii)?

The definition of fiduciary under 29 U.S.C. § 1002(21)(A)(ii) contains several elements, but only one is ultimately relevant here:   the statutory requirement that the person "render[] investment advice."   The other elements do not matter, and will not be discussed, because the Court finds that the evidentiary record fails to create an issue of fact about whether AUL rendered investment advice for the Plan.   It did not.

The DOL has promulgated a regulatory gloss for 29 U.S.C. § 1002(21)(A)(ii), which among other things, requires that the person "render[] advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property."   29 C.F.R. § 2510.3-21(c)(1)(i).   Only the second of

those alternatives—making a "recommendation as to the advisability of investing in, purchasing, or selling securities or other property"—is potentially at issue.  [*See* dkt. 136 at 34 (only arguing the second alternative).]

According to Mr. Leimkuehler, and confirmed at oral argument, the only "recommendation" that he claims AUL made about whether the Plan should purchase mutual funds was an implicit one:  By marketing a discrete menu of mutual funds that trustees like Mr. Leimkuehler could choose from, AUL was, in his view, implicitly recommending that the Plan buy those funds, as compared to all others.  [*See* dkt. 163 at 102.]  The Court must reject that claim, on both legal and factual grounds.

As a matter of law, simply offering a discrete menu of funds does not constitute investment advice here in the Seventh Circuit.  In *Hecker I*, the Seventh Circuit held that Fidelity Trust was not a fiduciary to the plan at issue even though it provided a "menu" of mutual funds that the plan sponsor could choose to include in the ERISA plan.  556 F.3d at 583.  If the implicit-recommendation-theory that Mr. Leimkuehler advances were correct, *Hecker I* would have been decided differently.

As a matter of fact, based on the uncontroverted evidence in the record, Mr. Leimkuehler's claim that AUL was providing implicit investment advice also fails.  From the beginning of the Plan's relationship with AUL, Mr. Leimkuehler used a third-party advisor, Marco Mazzone, "for advice [as] to what stocks and items should be in the plan…." [Dkt. 128-6 at 7.]  Furthermore, the annual reports that AUL provided about the mutual funds that he could select for inclusion in the Plan had no evaluative commentary about the appropriateness of particular funds, instead presenting only information like expenses and historical return information, [*see* dkt. 134-12, 134-13, 138], information that the DOL has determined fall outside the scope

of investment advice, *see* 29 C.F.R. § 2509.96-1(d)1)(ii) (excluding from "investment advice" information about "investment alternatives under the plan (*e.g.*, descriptions of investment objectives and philosophies, risk and return characteristics, historical return information, or related prospectuses objectives and philosophies, risk and return characteristics, historical return information, or related prospectuses)." (footnote omitted)). Indeed, the Court notes that Mr. Leimkuehler's Statement of Material Facts in Dispute contains no assertion that Mr. Leimkuehler himself believed that AUL implicitly recommended the "advisability" of the mutual funds it had partnered with.

Accordingly, the Court finds that the uncontroverted evidence establishes that AUL is not a fiduciary under 29 U.S. § 1002(21)(A)(ii).

### D. Does AUL's Revenue Sharing Implicate any "Discretionary Authority or Discretionary Responsibility" in the Plan's Administration under 29 U.S.C. § 1002(21)(A)(iii)?

As previously indicated, § 1002(21)(A)(iii) requires that AUL have "discretionary authority or discretionary responsibility in the administration of [the] plan." Before the Court can decide whether the evidence would support such a finding, however, the Court must first address AUL's argument that Mr. Leimkuehler may not rely upon that theory because he did not timely disclose it.

### 1.   Untimely Disclosure of § 1002(21)(A)(iii) as a Theory

Invoking cases holding that a party may not inject new claims into a case once it has reached summary judgment, *see, e.g.*, *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997), AUL seeks to preclude Mr. Leimkuehler from relying upon § 1002(21)(A)(iii) in response to AUL's motion for summary judgment. [Dkt. 143 at 14.] As Mr. Leimkuehler freely concedes via surreply, he "did not plead this theory of fiduciary status in his complaint, and he did not de-

scribe it in his [contention] interrogatory answer," which merely objected to having to provide any contentions and referred AUL back to the Complaint.  [Dkt. 146 at 1.]

AUL is right to criticize Mr. Leimkuehler for hiding the ball regarding this legal theory that he wished to pursue.  No litigant in federal court should ever have to guess what claims or defenses are at issue.  *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (explaining that liberal discovery under the Federal Rules was designed to make "trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.").  Had the Court been presented with Mr. Leimkuehler's objection to answering a contention interrogatory before it became at issue here, the Court would have overruled it and ordered him to answer based on what he knew at the time and supplement it later if discovery implicated additional theories.  *See* Fed. R. Civ. Pro. 33(b)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact…."); Fed. R. Civ. Pro. 26(e) (requiring parties to update their responses to discovery requests when new material information becomes available).  *See also Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999) (explaining that, given the liberal notice-pleading standards in federal court, defendants should be able to pose contention interrogatories "at the outset of litigation, before costly discovery is undertaken").

Notwithstanding Mr. Leimkuehler's erroneous refusal to answer a legitimate contention interrogatory and failure to seek an appropriate amendment of his complaint, the Court will not preclude him from seeking to invoke § 1002(21)(A)(iii).  He disclosed that fiduciary theory in his briefing on class certification, which predated AUL's motion for summary judgment.  [*See* dkt. 122.]  Consequently, AUL appropriately conceded at oral argument that it has suffered no prejudice from Mr. Leimkuehler's earlier nondisclosure.  Absent prejudice to AUL from his mis-

- 22 -

step, Mr. Leimkuehler is entitled to be heard on the merits.  Fed. R. Civ. Proc. 61 ("At every

stage of the proceeding, the court must disregard all errors and defects that do not affect any par-

ty's substantial rights."); *Hatmaker v. Memorial Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

### 2. Applying § 1002(21)(A)(iii)

Turning now to the merits of 29 U.S.C. § 1002(21)(A)(iii), Mr. Leimkuehler argues that

because AUL has contractually reserved for itself multiple powers to unilaterally alter the Plan's

administration, it "has…discretionary authority or discretionary responsibility in the administra-

tion of such plan," 29 U.S.C. § 1002(21)(A)(iii).  Specifically, Mr. Liemkuehler cites, [dkt. 136

at 37-38], AUL's contractual rights to do the following as implicating discretionary authority in

the Plan's administration:

- AUL's right "to make additions to, deletions from, substitution for, or combina-
  tions of, the securities that are held by the Investment Account," [dkt. 128-11 at §
  3.3(a)];

- AUL's right "to eliminate the shares of any of the eligible Mutual Funds, Portfo-
  lios…if further investment in any or all eligible Mutual Funds…becomes inap-
  propriate in view of the purposes of the contract," [*id.*];

- AUL's right "to transfer assets from any Investment Account to another separate
  account of AUL or Investment Account," [*id.* at § 3.3(b)]; and

- AUL's right to combine one or more Investment Accounts and [to] establish a
  committee, board or other group to manage one or more aspects of the Investment
  Accounts," [*id.* at § 3.3(c)].

AUL does not deny that those contractual rights implicate discretionary administration of the

Plan.  [*See* dkt. 143 at 14-15.]

AUL does, however, correctly argue that it is entitled to summary judgment because Mr.

Leimkuehler has not demonstrated how any of that discretion implicates the selection of share

classes, and resulting revenue sharing, alleged here.  *See generally Chicago Bd. Options Ex-

change, Inc. v. Conn. Gen. Life Ins. Co.*, 713 F.2d 254, 259 (7th Cir. 1983) ("It is important to

- 23 -

remember that if Connecticut General is a fiduciary because of the power to amend [the con-tract], this status only governs actions taken in regard to amending the contract and does not im-pose fiduciary obligations upon Connecticut General when taking other actions.").  For both 29 U.S.C. § 1104(a)(1)(A) and 29 U.S.C. § 1106(b)(3), the to-the-extent limitation inherent in the statutory definition of "fiduciary" precludes a finding that AUL was acting as a fiduciary with respect to the revenue sharing that took place here.  Mr. Leimkuehler has introduced no evidence that AUL's used its discretionary administrative power—which he does not contend it ever used—to impact Plan participants' decisions about whether they wanted to invest in the mutual funds that Mr. Leimkuehler decided to make available to them, given the total expenses dis-closed to them.  Some participants chose to invest in Vanguard funds, which never paid revenue sharing.  Others invested in funds that, unbeknownst to them, engaged in revenue sharing with AUL—a practice that, from this record, did not result in Plan participants paying more in ex-penses than was disclosed and which may, in fact, have ultimately reduced overall expenses of the Plan.

Accordingly, the Court finds that AUL is entitled to summary judgment as a matter of law that it could not have violated any of the claimed fiduciary duties that ERISA imposes.  *See generally* Opinion 97-15A, 1997 ERISA LEXIS 18, at *10-11 (May 22, 1997) ("[I]t is generally the view of the Department that if a trustee acts pursuant to a direction…and does not exercise any authority or control to cause a plan to invest in a mutual fund, the mere receipt by the trustee of a fee or other compensation from the mutual fund in connection with the investment would not in and of itself violate section 406(b)(3)."); *Tibble v. Edison Intern.*, 639 F. Supp. 2d 1074, 1091 (C.D. Cal. 2009) (holding that where "decisions that resulted in the generation of…revenue sharing" did not arise from the exercise of the defendant's discretionary authority, the defendant

- 24 -

"cannot be a fiduciary with respect to those decisions, and therefore, cannot be liable for simply

receiving the consideration from those transactions.").

## IV.
### CONCLUSION

In light of *Hecker*, 401(k) providers do not become fiduciaries merely by limiting the

universe of mutual funds providers offer to 401(k) plans.  Nor do they become fiduciaries merely

by receiving shared revenue from those funds upon execution of plan participants' investment

instructions to whom the total expense of the investment was accurately disclosed. *See Hecker*,

556 F.3d at 585 (rejecting "the proposition that there is something wrong, for ERISA purposes,"

with that type of arrangement).  Given those legal propositions and the other Seventh Circuit au-

thority governing the issues raised, Mr. Leimkuehler has failed to present evidence or argument

that would enable him to prevail in this action.  AUL's motion for summary judgment, [dkt.

127], is **GRANTED**.

01/05/2012

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


**Distribution via CM/ECF:**

Klint L. Bruno
KOREIN TILLERY LLC
kbruno@koreintillery.com

Amanda C. Couture
DELANEY & DELANEY
acouture@delaneylaw.net

Edward O'Donnell DeLaney
DELANEY & DELANEY LLC
ed@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Joel S. Feldman
SIDLEY AUSTIN LLP
jfeldman@sidley.com

Bart A. Karwath
BARNES & THORNBURG LLP
bart.karwath@btlaw.com

Robert L. King
KOREIN TILLERY, LLC
rking@koreintillery.com

Robert D. MacGill
BARNES & THORNBURG LLP
rmacgill@btlaw.com

Eric S. Mattson
SIDLEY AUSTIN LLP
emattson@sidley.com

Sarah H. Newman
SIDLEY AUSTIN LLP
snewman@sidley.com

Dennis P. Stolle
BARNES & THORNBURG LLP
dstolle@btlaw.com

Eric Hyman Zagrans
eric@zagrans.com

RSA26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ROBERT LEIMKUEHLER, as Trustee of and on )
behalf of LEIMKUEHLER, INC. PROFIT SHAR- )
ING PLAN, )
    *Plaintiff*, )
  )
  *vs.* )   1:10-cv-00333-JMS-TAB
  )
AMERICAN UNITED LIFE INSURANCE COMPA- )
NY, )
    *Defendant*. )

## ORDER

Presently before the Court is Plaintiff / Counter-defendant Robert Leimkuehler's (the

"Trustee") motion to dismiss Defendant / Counter-plaintiff American United Life Insurance

Company's ("AUL") Counterclaims.  [Dkt. 68.]

## I.
### STANDARD OF REVIEW

The Federal Rules impose only a notice-pleading requirement for complaints and coun-

terclaims.  Thus, "[s]pecific facts are not necessary; the [plaintiff] need only 'give the defendant

fair notice of what the claim is and the grounds upon which it rests.'  *Erickson v. Pardus*, 551

U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) (alteration omitted))

(per curium).  *See also Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923-24 (7th Cir.

2007) ("Facts that substantiate the claim ultimately must be put into evidence, but the rule 'plain-

tiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.' That's the

difference between fact pleading (which the courts of Illinois use) and claim pleading under Rule

8." (citations omitted)).  Nonetheless, "a complaint may be so sketchy that the complaint does

not provide the type of notice of the claim to which the defendant is entitled." *Airborne Beepers*

RSA27

*& Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (synthesizing *Erickson* and *Twombly*).  In that circumstance, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is proper.  A motion filed under that rule asks whether the complaint (or counterclaim) "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544).  For the purposes of that rule, the Court will ignore legally conclusory allegations.  *Id.* at 1949-50 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."  (quotation omitted)).

## II.
### BACKGROUND

In the underlying case, the Trustee has sued AUL, a 401(k) administrator, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, *et seq.*  He alleges that both he and AUL are fiduciaries of the Leimkuehler, Inc. Profit Sharing Plan (the "Plan") and that AUL has breached its fiduciary duties with respect to the Plan.  The Court described the Complaint's allegations in detail when ruling upon AUL's motion to dismiss.[1]  [*See* dkt. 63 at 2-7.]  Essentially, the Trustee accuses AUL of profiting from a revenue sharing arrangement with many of the investment vehicles that AUL offers to the Plan's participants.  [*See* dkt. 1 ¶¶9-10, 20, 23.]  Those revenue-sharing payments, the Trustee alleges, have conferred a "windfall[]" on AUL.  [*Id.* ¶57.]  Additionally, "irrespective of AUL's status as an ERISA fiduciary," a status that AUL denies, the Trustee alleged, in a count that the Court ultimately dismissed, that the revenue-sharing payments have prevented him "from discharging [his] ERISA … fiduciary duty" to

---

[1] The motion was granted in part and denied in part.

RSA28

the Plan, [*id.* ¶ 68(a)], specifically the "duty to 'defray[] reasonable expenses of administering' [the Plan], as is [his] duty under ERISA § 404(a)," [dkt. 1 ¶72 (first alteration in original)].

While AUL denies that it is actually a fiduciary with respect to the Plan, [dkt. 67 at 7 ¶32], AUL asserts its Counterclaims in the event that it is wrong about its fiduciary status, [*id.* at 23 ¶1]. It alleges that the Trustee "approved the investment options made available" to the Plan and indeed "had the authority and responsibility to make the ultimate decision as to which investment options were appropriate for the Plan participants." [*Id.* at 25 ¶¶11-12.] It says that the total expenses that Plan participants paid were accurately described and that the revenue-sharing payments reduced the fees that AUL directly charged the Plan and participants. [*Id.* at ¶15.] So if any technical violation of ERISA occurred by the failure to accurately itemize the distribution of expenses, the Trustee is partially responsible too because ERISA fiduciaries must ensure that their co-fiduciaries don't breach their fiduciary duties. [*Id.* at 26-27 ¶22.]

### III.
#### DISCUSSION

AUL's Counterclaims are styled in five counts, each of which the Trustee seeks to dismiss. Through Counts I and II, AUL seeks, respectively, contribution and indemnity under ERISA. [*Id.* at 26-28.] Counts III and IV seek the same relief, albeit under common law rather than ERISA. [*Id.* at 28-30.] Finally, through Count V, AUL accuses the Trustee of breaching his own fiduciary duties; therefore, AUL sues on the Plan's behalf pursuant to 29 U.S.C. § 1132(a). Each count depends upon the Trustee prevailing in his allegation that AUL is, in fact, a co-fiduciary of the Plan, a status that AUL denies that it has.

### A.  Counts I and II:  Contribution and Indemnity under ERISA

RSA29

The Trustee makes several arguments as to why the Court should dismiss Counts I and II. First, it says that the Seventh Circuit authority recognizing contribution and indemnity rights under ERISA, *Free v. Briody*, 732 F.2d 1331 (7th Cir. 1984), is no longer good law. Second, even if *Free* remains good law, the Trustee says that it doesn't permit contribution or indemnity where, as here, an active fiduciary seeks to recover from a passive fiduciary. Finally, again assuming that ERISA recognizes any claims for contribution or indemnity at all, the Trustee denies that any recovery under 29 U.S.C § 1105(a) is available.

### A. The State of *Free*

In *Free*, the Seventh Circuit interpreted 29 U.S.C. § 1109(a), which reads as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Based largely on ERISA's legislative history, the Seventh Circuit decided that when Congress gave courts the power to award "such other equitable or remedial relief," it gave "courts the power to shape an award so as to make the injured plan whole while at the same time apportioning the damages equitably between the wrongdoers," such as by indemnity, *Free*, 732 F.2d at 1337, or by contribution.[2]

The Trustee argues that *Free* no longer remains good law after one or more of three later Supreme Court decisions, none of which specifically considered indemnification or contribution

---

[2] *Free* only involved a claim for indemnity. The Trustee makes no argument, however, that *Free* failed to authorize contribution, a closely related concept. The only difference between the two is that the former involves complete recovery of damages paid, while the latter involves only partial recovery. *See Donovan v. Robbins*, 752 F.2d 1170, 1178 (7th Cir. 1985) (citation omitted).

RSA30

between co-fiduciaries.  The first case is *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985), which held that equitable relief under 29 U.S.C. § 1109(a) must inure the benefit of the benefit plan as a whole.  *Id.* at 140-42.  According to the Trustee, because contribution and indemnity only benefit the co-fiduciary and not the plan as whole, *Free*'s recognition of those theories under 29 U.S.C. § 1109(a) must give way.  Plus, the Trustee maintains that indemnity and contribution aren't expressly mentioned in the statute; therefore, permitting them would violate the Supreme Court's directive against implying ERISA remedies beyond those that Congress authorized "expressly," *Russell*, 473 U.S. at 146.  The other two Supreme Court cases reinforce the express-provision requirement for remedies.  *See Mertens v. Hewitt Associates*, 508 U.S. 248, 254 (1993) (quoting *Russell*, 473 U.S. at 146-47); *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002) (quoting *Mertens*, 508 U.S. at 251 and *Russell*, 473 U.S. at 147).

District courts in this Circuit have split as to whether the Supreme Court authority discussed above so undermines the rationale in *Free* that *Free* itself must be said to be overturned.  *See BP Corp. N. Am. v. N. Trust Invs., N.A.*, 692 F. Supp. 2d 980, 983-84 (N.D. Ill. 2010) (collecting conflicting cases).  This Court, however, finds *Free* to still be binding precedent because it is directly on point and none of the Supreme Court cases the Trustee has cited specifically address contribution and indemnity rights.  When subsequent Supreme Court authority undermines the rationale of earlier Supreme Court authority that otherwise directly addresses the legal issue under consideration, the Supreme Court has commanded lower courts to continue to follow the on-point authority.  *Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We reaffirm that if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly con-

- 5 -

trols, leaving to this Court the prerogative of overruling its own decisions." (quotation omitted)). The Seventh Circuit appears to adopt a similar view of its own precedents that have only been implicitly overturned by the Supreme Court—in other words, trial courts should follow the Seventh Circuit authority if it is on point and not in conflict with the exact question presented by later Supreme Court authority. *See SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 330 n.3 (7th Cir. 2010) ("[O]ur decision in *Wozniak* was…undermined by the Supreme Court's decision in *Devlin v. Scardelletti*, 536 U.S. 1, 122 S. Ct. 2005, 153 L. Ed. 2d 27 (2002). Recognizing this, we overruled *Wozniak* in *SEC v. Enterprise Trust Co.*, 559 F.3d 649, 652 (7th Cir. 2009)…."). Thus, the Court will not presume to declare invalid a decision of its supervising Court of Appeals, especially one that the Court of Appeals has continued to cite as recently as 1998, *see Mathews v. Sears Pension Plan*, 144 F.3d 461, 466 (7th Cir. 1998) (citing *Free*'s approval of indemnity between co-fiduciaries), a date after two of the three Supreme Court cases the Trustee has identified.

## B.  AUL's Contribution and Indemnity Claims under *Free*

In arguing that AUL fails to state a claim for relief under *Free*, the Trustee focuses on the following passage from the opinion: "Congress clearly did not intend trustees to act as insurers of co-trustees' actions, and the only question that remains is whether [apart from a statutory provision not at issue here] a co-trustee…can… recoup his loss from his more culpable co-trustee. We believe that ERISA allows such an action **in narrowly appropriate circumstances**." *Free*, 732 F.2d at 1337 (emphasis added). According to the Trustee, the only "narrowly appropriate circumstances" are those involving the precise factual scenario at issue in that case: that of a fiduciary guilty of mere nonfeasance seeking recovery from a fiduciary guilty of malfeasance. *See*

- 6 -

*id.* at 1336-37 ("Whether ERISA allows a passive trustee to seek indemnification from a more culpable active trustee is not a wholly new question for this court.").

The Court, however, understands *Free* to hold that ERISA permits contribution or indemnity between co-fiduciaries, subject to general equitable principles. That is, indeed, what the Seventh Circuit said elsewhere in the opinion, when it approved of both its prior dicta and that of a trial court. *Id.* at 1337.[3] That is also what it said later in the opinion when it invoked "[g]eneral principles of trust law [that] provide for indemnification under the appropriate circumstances." *Id.* at 1338. That result also comports with the statutory language of 29 U.S.C. § 1109(a)—at issue in *Free*—which permits "such other equitable…relief as the court may deem appropriate." Thus, while a passive fiduciary may sometimes recover from an active one, other times it may not, depending on the circumstances in the case. And there may even be circumstances in which two active fiduciaries split the liability between them (after one of them has first made the beneficiary whole).

As for those general equitable principles, the Trustee agrees, [dkt. 69 at 10-11], that the Restatement (Second) of Trusts § 258, which *Free* cited approvingly, 732 F.2d at 1338,[4] correctly summarizes the liability of one fiduciary to another:

> (1) Except as stated in Subsection (2), where two trustees are liable to the beneficiary for a breach of trust, each of them is entitled to contribution from the other, except that

---

[3] Specifically, the Court said: "We have previously recognized, albeit in dicta, that an ERISA fiduciary 'may seek indemnification or contribution from co-fiduciaries.' *Alton Memorial Hospital v. Metropolitan Life Insurance Co.*, 656 F.2d 245, 250 (7th Cir. 1981). In *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629, 635 (W.D. Wis. 1979), the court reached a similar result, once again in dicta, stating that a right to indemnification is within the equitable discretion of the court when faced with co-trustees liable under ERISA. We think that these cases reached the correct result…."

[4] The opinion actually cites to "§ 158." Based upon the context, however, the citation appears to be a typographical error.

- 7 -

(a) if one of them is substantially more at fault than the other, he is not en-
titled to contribution from the other but the other is entitled to indemnity
from him; or

(b) if one of them receives a benefit from the breach of trust, the other is
entitled to indemnity from him to the extent of the benefit; and for any fur-
ther liability, if neither is more at fault than the other, each is entitled to
contribution.

(2) A trustee who commits a breach of trust in bad faith is not entitled to contribu-
tion or indemnity from his co-trustee.

Restatement (Second) of Trusts § 258. Shared liability is, therefore, the default setting, unless
and until one of the three exceptions applies.

In trying to argue that each of the three exceptions precludes any recovery here, the Trus-
tee argues at length about all the facts that the Counterclaims do not allege. For example, "AUL
has made no allegation, much less any plausible allegation, that the Trustee profited from ERISA
violations." [Dkt. 69 at 13 (emphasis omitted).] But that tactic of argument misses the mark; the
focus of a motion to dismiss is on what the Counterclaims say, not on what they don't say. *See
Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) ("Any district judge…tempted to write 'this
complaint is deficient because it does not contain. . .' should stop and think: What rule of law
requires a complaint to contain that allegation? Rule 9(b) has a short list of things that plaintiffs
must plead with particularity, but 'interception' is not on that list." (second ellipsis in original)).
*See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007) (rejecting any suggestion that
the Supreme Court was subjecting all complaints to the particularity requirements of Fed. R. Civ.
Pro. 9). Indeed, to the extent that the three exceptions contained in the Restatement constitute
equitable defenses, the Counterclaims needn't plead around them at all. *See Cancer Found., Inc.
v. Cerberus Capital Mgmt.*, *LP*, 559 F.3d 671, 674-675 (7th Cir. 2009) ("Dismissing a complaint
as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and

- 8 -

overcome affirmative defenses, such as the statute of limitations.  But dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness.").

Nothing in the Trustee's papers specifically disputes that the allegations actually made in Counterclaims satisfy the general rule:  If AUL is a co-fiduciary and if it must pay the Plan, it should be permitted to recover, in whole or in part, from its co-fiduciary.  The Counterclaims, therefore, survive the Trustee's motion to dismiss unless their allegations establish that one of the three exceptions applies.  They do not.

With respect to the exception for "substantial fault," the Trustee argues that because he didn't do anything wrong while AUL did, AUL necessarily has substantially more fault than the Trustee.  [Dkt. 74 at 6.]  That argument, however, rests upon an assumption that the Trustee is in fact blameless, an allegation that appears nowhere in the Counterclaims.  Far from it:  The Counterclaims note that the Trustee himself admitted that he failed to "effectively discharge [his] duties to defray reasonable expenses of administering" the Plan.  [Dkt. 1 ¶72 (alteration and quotation omitted).]  While the Trustee backpedals away from his earlier allegation by arguing that the allegation was made contingent upon AUL not being held to be a fiduciary, [*see* dkt. 74 at 1], the Complaint says otherwise—the claim was made "irrespective of AUL's status as an ERISA fiduciary," [dkt. 1 ¶68].  Furthermore, even if the Trustee can finely parse away his statement, that type of parsing is inappropriate on a motion to dismiss, where the non-moving party receives the benefits of the inferences.  And the fact that the Trustee said what he said doesn't evaporate merely because the Court ultimately dismissed the count of the Complaint that contained that statement; it remains an admission of a party opponent.  *See* Fed. R. Evid. 801(d)(2).  Besides, the Counterclaims allege that the Trustee agreed to enter into the contract with AUL and exer-

- 9 -

RSA35

cised his ultimate authority to select the investments made available to the Plan.  [Dkt. 67 at 24-25 ¶¶11-12.]

Under those circumstances, the Court cannot find as a matter of law that the Trustee bears no responsibility for the amount and allocation of expenses that he now contends violate ERISA.[5]

The second exception under the Restatement—one fiduciary's receipt of benefit—also doesn't necessarily apply here.  Absent a situation in which one fiduciary is more at fault than the other, the exception only applies to the extent of the benefit received, after which contribution is permitted.  Restatement (Second) of Trusts § 258(1)(b).  Because the Trustee declined AUL's invitation to dismiss with prejudice any claim for damages above the disgorgement of the allegedly improper benefit, [*compare* dkt. 70 at 12, *with* dkt. 74 at 9 (saying only that he is "currently unaware of any other 'damage'")], a damage award might exceed AUL's benefit.  If so, depending on the relative culpability of the parties—which as explained above, the Court can't assess here—this exception may not apply either.[6]

The final exception precludes a claim contribution and indemnity by a fiduciary who has acted in bad faith.  The Trustee's only argument for this exception is that AUL, as a fiduciary,  is presumed to know that the fee practices at issue here were illegal.  The support the Trustee offers for that proposition depends on some artful use of ellipses that obscure the actual meaning of the opinion, which in any event arose in the context of deciding whether a fee award should issue in an employment case that settled, a situation far different than that here.  *Compare* [dkt. 69 at 14

---

[5] The Court notes that the Trustee has failed to rise to AUL's challenge to cite a single case that has made the substantial-fault determination on at the motion-to-dismiss stage, [*compare* dkt. 70 at 9-10, *with* dkt. 74 at 6-7].  Further factual development may be particularly appropriate to decide whether the Trustee has taken sufficient measures after this action began to mitigate any losses that the Trustee alleges the fee arrangement is causing the Plan.

[6] AUL doesn't dispute that it may not seek contribution or indemnity under this exception for "disgorgement or restitution in the amount of the revenue sharing payments, less the fair market value of the services."  [Dkt. 70 at 12 (quotation omitted).]

RSA36

(offering the following citation: "*Jones v. Local 4B, Graphic Arts Int'l Union*, 595 F. Supp. 792, 795 (D.D.C. 1984) ('fiduciaries…have a duty to their beneficiaries, they have a greater responsibility to obey the law…and, are presumed to know the law')"], *with Jones*, 595 F. Supp. at 795 ("However, while Union officers are fiduciaries and have a duty to their beneficiaries, they have a greater responsibility to obey the law.  Union officers are the same as private employers, and, are presumed to know the law.").  Besides, if every breach of fiduciary duty were always in bad faith, there would never be any contribution or indemnity between co-fiduciaries—even though the Restatement clearly contemplates shared liability as the default rule.[7]  Certainly the heightened duties that fiduciaries have may help inform whether the fiduciary acted in good faith; they don't, however, automatically decide the question.

Because, based on the allegations in the Counterclaims, the Court cannot say that any of the three exceptions set forth in Restatement § 258 preclude contribution and indemnity, no dismissal is proper.

### C.  29 U.S.C. § 1105(a)

Although Counts I and II didn't explicitly mention 29 U.S.C. § 1105(a), the Trustee's opening brief also argued, out of an abundance of caution, that AUL shouldn't be able to rely on that statutory provision to obtain indemnity or contribution.  That provision provides as follows:

> (a) Circumstances giving to liability. In addition to any liability which he may have under any other provision of this part [29 USCS §§ 1101 et seq.], a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
>> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

---

[7] Taking the Trustee's claim seriously—that as a fiduciary, AUL is automatically clairvoyant as to how the judiciary will decide this action—would also require finding that AUL's refusal to capitulate automatically violates Rule 11.   The Court is quite certain that *Jones* is not the panacea that the Trustee maintains that it is with respect to the bad-faith exception.

RSA37

> (2) if, by his failure to comply with section 404(a)(1) [29 USCS § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). The Trustee cites case law holding that § 1105(a) doesn't provide a vehicle for contribution or indemnity as between co-fiduciaries. *See Mutual Life Ins. Co. v. Yampol*, 706 F. Supp. 596, 598 (N.D. Ill. 1989) ("29 U.S.C. § 1105(a)…merely creates joint and several liability among co-fiduciaries in certain circumstances and is silent on the issue of contribution. Moreover, the Supreme Court has rejected the equation of joint and several liability with a right of contribution." (footnote omitted)).

In the three brief paragraphs—unadorned with citations to any case law—that AUL offers relating to 29 U.S.C. § 1105(a), AUL doesn't dispute that this portion of ERISA doesn't authorize contribution or indemnity. Instead, it argues that, assuming that the Trustee's view of the law is correct, the Trustee's continued use of AUL as the Plan's service provider and the Trustee's failure to exercise reasonable care to prevent AUL malfeasance subject the Trustee to liability in his own right. [*See* dkt. 70 at 12-13.]

But § 1105(a) isn't actually at issue in the Counterclaims. Any recovery under that statute, under AUL's view of it, would flow to the Plan, not to AUL; the recovery wouldn't constitute contribution or indemnity to AUL. Because—unlike Count V—AUL doesn't purport to bring Counts I and II on behalf of the Plan, [*see* dkt. 67 at 26-27], and because AUL doesn't dispute that § 1105(a) doesn't provide a basis for contribution or indemnity as between co-fiduciaries, the Court finds that AUL hasn't stated a claim under § 1105(a) in Counts I and II.

### B.  Counts III and IV:  Common-law Contribution and Indemnity

Unlike in *Free*, which involved a concession that federal common law didn't permit freestanding contribution or indemnity—that relief, if any, would have be grounded in ERISA

RSA38

itself—AUL invokes federal common law in its Counts III and IV.  *Free*, 732 F.2d at 1336 ("Briody admits that a right to indemnity from a co-trustee cannot be based upon the federal common law.  The issue, then, is whether such a right can be found in ERISA.").  The Trustee moves to dismiss the claims as duplicative of Counts I and II.

In our constitutional system, it is Congress—not the federal judiciary—that is tasked with making law, except for narrow instances in which the federal courts may develop federal common law:  "those in which a federal rule of decision is necessary to protect uniquely federal interests and those in which Congress has given the courts the power to develop substantive law." *Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640 (1981) (quotation and citations omitted).

Because the one paragraph defense of Counts III and IV that AUL offers doesn't specifically undertake the analysis that would permit the making of new federal common law and because, in any event, AUL doesn't ask the Court to create any broader relief than that *Free* has found ERISA itself already authorizes, the Court declines AUL's invitation to create new federal common law.  The Court will, therefore, dismiss Counts III and IV.

### C.  Count V:  AUL's Claim on Behalf of the Plan for Breach of Fiduciary Duty

AUL's Count V asserts a claim on behalf of the Plan against the Trustee for his own violations of fiduciary duty.  *See* 29 U.S.C. § 1132(a)(2) (permitting fiduciaries to sue on behalf of the plan for violations of § 1109).  The Trustee denies that he has any fault that might make him directly liable to the Plan.

The Court will not, however, address the validity of Count V at this time.  By separate order, the Court has directed the parties to address the possible conflict of interest that has arisen between the interests of the parties and the Plan here.  Prudence cautions against deciding the fate of Count V before that possible conflict issue has been resolved, so as not to potentially in-

RSA39

jure the rights of the Plan to argue that the Trustee might face direct liability to Plan.  The Court

will, therefore, deny the motion to dismiss Count V, but do so without prejudice.  At the appro-

priate time, either via Rule 12(c) or Rule 56(c), the Trustee may renew his arguments.

## IV.
### CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** the Trustee's motion to dismiss,

[dkt. 68].  The motion is **DENIED** with respect to Counts I and II, except to the extent that those

counts rely upon 29 U.S.C. § 1105(a).  The motion is **GRANTED** with respect to Counts III and

IV.  The motion is **DENIED WITHOUT PREJUDICE** as to Count V.

04/25/2011

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Klint L. Bruno
KOREIN TILLERY LLC
kbruno@koreintillery.com

Amanda C. Couture
DELANEY & DELANEY
acouture@delaneylaw.net

Edward O'Donnell DeLaney
DELANEY & DELANEY LLC
ed@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

RSA40

Joel S. Feldman
SIDLEY AUSTIN LLP
jfeldman@sidley.com

Bart A. Karwath
BARNES & THORNBURG LLP
bart.karwath@btlaw.com

Robert L. King
KOREIN TILLERY, LLC
rking@koreintillery.com

Robert D. MacGill
BARNES & THORNBURG LLP
rmacgill@btlaw.com

Eric S. Mattson
SIDLEY AUSTIN LLP
emattson@sidley.com

Sarah H. Newman
SIDLEY AUSTIN LLP
snewman@sidley.com

Dennis P. Stolle
BARNES & THORNBURG LLP
dstolle@btlaw.com

Eric Hyman Zagrans
eric@zagrans.com

RSA41

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT V. LEIMKUEHLER, as trustee of an on behalf of LEIMKUEHLER, INC. PROFIT SHARING PLAN, | ) ) ) | |
| _Plaintiff,_ | ) | |
| | ) | |
| _vs._ | ) | 1:10-cv-00333-JMS-TAB |
| | ) | |
| AMERICAN UNITED LIFE INSURANCE COMPANY, | ) ) | |
| _Defendant._ | ) | |

## <u>ORDER</u>

Presently before the Court in this action brought under the Employee Retirement Security Act of 1974 ("ERISA") is Defendant American United Life Insurance Company's ("AUL") Motion for Attorney's Fees and Costs. [Dkt. 183.] AUL successfully defended this action; the Court entered judgment in favor of AUL after dismissing some of the Plaintiff-Trustee's claims and granting summary judgment against the Trustee on the rest (rulings with which familiarity is assumed here). [Dkts. 63, 165.] AUL now asks for approximately $2 million in fees and costs as the prevailing party under 29 U.S.C. § 1132(g) (providing that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party") or, in the alternative, for approximately $85,000 in costs under Federal Rule of Civil Procedure 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). [_See_ dkt. 183.]

### A. Fees and Costs Under ERISA

As the prevailing party in this litigation, a status the Trustee does not contest, [dkt. 187 at 4], a "modest presumption" exists that AUL will recover its fees and costs under ERISA. _See_

RSA42

*Herman v. Cent. States*, 423 F.3d 684, 695 (7th Cir. 2005) (citation omitted).  Of course pre-sumption is not entitlement.  *Id.*

In considering whether the presumption should give way, the Seventh Circuit has identi-fied two different tests.  One possible test involves consideration of five specific factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circum-stances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question re-garding ERISA; and (5) the relative merits of the parties' positions.

*Marquardt v. North American Car Corp.*, 652 F.2d 715, 717 (7th Cir. 1981) (adopting the five factors but recognizing that they do not "constitute the only test which the district court can use").  Another test borrows the Equal Access to Justice Act's test for assessing fees against the United States—in other words, a fee award "unless the court finds that the position of the [losing party] was substantially justified or that special circumstances make an award unjust."  *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir. 1984).  According to the Seventh Circuit, "both tests essentially ask the same question:  'was the losing party's position substantially justi-fied and taken in good faith, or was that party simply out to harass its opponent?'"  *Kolbe & Kol-be Health & Welfare Benefit Plan v. Med. College, Inc.*, 657 F.3d 496, 506 (7th Cir. 2011) (quo-tation omitted).

The precise fate of those tests remains in potential flux.  One panel of the Seventh Circuit has called for the abolition of the five-factor test in favor of the *Bittner* approach.  *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 672 (7th Cir. 2007) ("[The five-factor test] adds little, though, to the simpler test, and perhaps has outlived its usefulness. American law is needlessly complex, and occasions for simplification should be embraced.").  But even more importantly, the Supreme Court recently decided *Hardt v. Reliance Std. Life Ins. Co.*, 130 S. Ct. 2149 (2010).

- 2 -

It held that even a non-"prevailing" parties could potentially recover fees so long as the party ob-

tained "some success on the merits," regardless as to what the five-factor test suggested. *Id.* at

2158.  The Supreme Court left open, however, "the possibility that once a claimant has satisfied

this requirement, and thus becomes eligible for a fees award under [29 U.S.C.] § 1132(g)(1), a

court may consider the five factors adopted by the Court of Appeals … in deciding whether to

award attorney's fees." *Id.* at n.8.  Following *Hart*, one panel of the Seventh Circuit has declared

both tests alive and well.  *Kolbe*, 657 F.3d at 505-06.  A few days later, another panel declared:

"Language in some appellate opinions declaring 'bad faith' vital to an award under §1132(g)(1)

did not survive *Hardt*." *Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011).  And it also

declared that whether the *Bittner* substantial-justification-or-special-circumstances test survived

*Hart* is an "issue we can avoid until the answer matters." *Id.*

 While the parties dispute which of the two tests survive and in which form, the Court can

avoid navigating that thicket because, even under AUL's preferred approach, the Court declines

to make any award.  AUL advocates the *Bittner* test.  [*See* dkt. 197.]  Thus, an award of fees and

costs would be appropriate unless the Trustee was "substantially justified" in maintaining this

unsuccessful action or unless "special circumstances" were present.  The former is present here.

Although the Equal Access to Justice Act—which provides the standards here under

*Bittner*—uses the phrase "substantially justified," its meaning "is neither defined nor self-

evident." *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 381 (7th Cir.

2010).  Nonetheless, according to the case law, a substantially justified position is one that is bet-

ter than frivolous but less than meritorious—one that is "justified to a degree that could satisfy a

reasonable person and hence has a reasonable basis both in law and in fact" such that no infer-

ence arises that maintaining it was "careless and oppressive" to the losing side. *Id.* (quotation

RSA44

omitted).  Accordingly, the "easier" a case is, the more likely it is that the losing side was not

substantially justified in resisting it.  *Cf. Ervin v. Astrue*, 1:08-cv-00970-DFH-DML, dkt. 31

(S.D. Ind. Feb. 23, 2010) (Hamilton, J.) ("[I]t will probably be an abuse of discretion [under the

Equal Access to Justice Act] to deny fees if the case for remand [under the Social Security Act]

is strong and clear-cut.").

AUL contends that the Trustee had no business filing this action in light of *Hecker v.

Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), a case that makes the claims "clear[]" losers.  [Dkt.

184 at 3.]  The Court disagrees; the case was close enough that a reasonable person could have

filed suit.[1]  There was relevant authority that supported the Trustee's claims.  *See Haddock v.

Nationwide Fin. Servs., Inc.*, 419 F.Supp.2d 156 (D. Conn. 2006).  Further, the Department of

Labor is threatening suit over the same conduct at issue here.  [*See* dkt. 151-2.]  While the Court

did not pay *Chevron* "deference" to the Department of Labor's position on the merits because the

Department of Labor's position is preliminary, nonetheless the Department of Labor's endorse-

ment of the Trustee's claims bolsters the reasonableness of the Trustee's suit.  Additionally the

Court notes that AUL's own employees had voiced "significant reservations about disclosing

revenue sharing," [134-6 at 2-3], further suggesting that the practice was not as "clearly" innocu-

ous as AUL argues.

Accordingly, the Court declines to issue any award to AUL under 29 U.S.C. § 1132(g).

### B.  Costs Under Federal Rule of Civil Procedure 54(d)

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other

than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. Pro. 54(d).  Ordi-

---

[1] Additionally, the Court notes that the Trustee originally filed this action in the Northern District of Ohio, but it was transferred here approximately seven months later.  [*See* dkts. 1, 23.]  AUL makes no claim that the law of the Sixth Circuit is as favorable to AUL's litigation position as the Court found the law of the Seventh Circuit to be.

RSA45

narily, a "heavy presumption" exists that the prevailing party will receive costs. *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). The Court has discretion to find that presumption overcome upon a showing of the losing party's inability to pay, *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006) (collecting cases), or upon a showing of "misconduct by the prevailing party worthy of a penalty (for example, calling unnecessary witnesses, raising unnecessary issues, or otherwise unnecessarily prolonging the proceedings)." *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988). An open question exists, however, as to whether a party denied fees and costs under 29 U.S.C. § 1132(g) can receive costs under Federal Rule of Civil Procedure 54(d). *See Loomis*, 658 F.3d at 674 (leaving the question open).

The Court finds that the inability-to-pay consideration is dispositive and overcomes the normal presumption. As AUL concedes, the Trustee can only be held personally liable for costs if he was "personally at fault" in maintaining this action, which in AUL's view means litigating the action without substantial justification. [Dkt. 202 at 5 (quoting Restatement (Third) of Trusts § 106(2).] Nor can the Trustee legally compel his attorneys to reimburse him for an award of costs; the Trustee's counsel—an officer of the Court—submits, and the Court accepts, that no indemnification agreement is in place, [*id.* at 3]. While AUL argues that counsel would likely indemnify him anyway even in the absence of an agreement, no levy of judgment could compel counsel to transfer funds if AUL is wrong. Further, *White v. Sundstrand Corp.*'s statement that class counsel's failure to contractually agree to indemnify for costs is "a poor reason to drop the costs back in defendants' laps," is inapposite here, as that case—unlike this case—had named plaintiffs who could be assessed costs. 256 F.3d 580, 586 (7th Cir. 2001). Here the Court notes

RSA46

that, when the Court originally asked whether the ERISA plan or individual plan members should be joined as necessary parties, AUL said no.  [*See* dkt. 81.]

Finally, insofar as AUL argues that the Court should resolve a circuit split and hold that the ERISA plan can be forced to pay the substantial cost award that AUL seeks, the Court will not do so. AUL has pointed to no authority, and the Court has found none, that would permit costs to be taxed under Rule 54(d) against an entity that was not named as a party to the litigation—and the plan here was not.

"[T]he amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised," *Rivera*, 469 F.3d at 636, together with the Trustee's inability to pay mean that the Court will tax no costs under Rule 54(d).

Given the foregoing, the Court finds that this action presents no occasion to resolve the open question as to whether a party denied fees and costs under 29 U.S.C. § 1132(g) can receive costs under Federal Rule of Civil Procedure 54(d).  Costs aren't appropriate under Rule 54 regardless of the Court's ruling on the 29 U.S.C. § 1132(g) request.

## CONCLUSION

AUL's Motion for Attorney's Fees and Costs, [dkt. 183], is **DENIED**.  In light of that denial, the AARP's Motion for Leave to File Brief Amicus Curiae in Opposition to Defendant's Motion for Attorney's Fees, [dkt. 190], and the Trustee's Motion to Stay, [dkt. 206], are **DENIED AS MOOT**.

05/31/2012

_Jane Magnus-Stinson_

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record.**